Chief Justice Robertson
delivered the Opinion of the Court.
On the 26th day of May, 1815, James T. Pendleton, as cashier of the Bardstown branch of the Bank of Kentucky, and Thomas Barbor, James Taylor, and William Taylor, as his sureties, executed to the President and Directors of the principal Bank, a joint and several bond, in the penalty of fifty thousand dollars, for securing the fidelity of the cashier in the fulfilment of all his official duties; and, on the 15th of January, 1818, the same cashier, as principal, and Jacob Castleman, Samuel T. Beall, Martin H. Wickliffe, and James D. Breckinridge, as his sureties, in obedience to a by-law of the parent board, gave a supplemental bond for the same purpose, to the same obligees, and in the same penalty, as an additional security.
Afterwards, the Bank of Kentucky brought a suit on the first bond, against all the parties thereto, alleging breaches by official delinquencies occurring, as would seem from, the record, after the date of the last bond; and, having obtained a judgment, afterwards reversed by this Court, in 1824, (1 Mon. 171,) succeeded in obtaining another judgment, on the 7th of September, 1827, against William Taylor (the other defendants having died,) for six thousand six hundred and eighty nine dollars damages, and two hundred and twenty-seven dollars and five cents costs: which was affirmed by this Court, in November, 1829. (2 J. J. M. 564.)
On the 15th January, 1831, Taylor, against whom the last judgment had been rendered, filed a bill in chancery against the representatives of Pendleton, and also against all the surviving sureties in the last bond, and the representatives of the deceased sureties in both bonds, praying for contribution, and alleging that, on the 6th of *111 January, 1831, he had discharged the said judgment by paying seven thousand five hundred and eighty-five dollars; and that all the obligors in both bonds, excepting himself and Breckinridge, had become hopelessly insolvent; and also, that the co-surety James Taylor had, in his life time, made fraudulent alienations of his property to some of his children, whom he made defendants, and against whom he therefore also prayed a decree. But after James Taylor’s heirs and representatives had answered the bill, and denied the allegation of fraud, the complainant filed an ameneded bill, averring that his only hope of available recourse was against Breckinridge alone; and therefore, praying for a decree against him, for one half of the amount he had paid, and legal interest thereon: and the Circuit Court having, on the final hearing, dismissed the bill, without prejudice, as to all the parties except Breckinridge, and decreed against him, the payment of four thousand two hundred and fifty-two dollars and the costs of the suit—he appealed to this Court, and now insists that the decree is erroneous for the following reasons:
Co-sureties are all equally bound in equity, to contribute whenever the debt devolves upon them or any of them; and if some prove to he insolvent, the burden must be borne eqally by those who are not so.—And whenever their undertaking is to the same party, on account of the same principal, for the same debt or duty, and to the same extent—whether they are bound jointly or severally, by the same or by different writings, is not material, as regards contribution, in equity: the effect is the same.
First—Because, as he insists, he is not liable for any thing as a co-surety, and if even bound to contribute, he is not justly responsible for half the judgment.
Second—That there is no sufficient proof, either that the judgment was proper, or that it was given for defalcations which occurred after the date of the last bond; or that Taylor had discharged it by paying the amount of it.
Third—Because the decree is for too large a sum.
These objections to the decree will now be considered, in the foregoing order.
I. If Breckinridge be liable, his liability arises altogether from the fact, that in equity, the sureties in the two separate bonds, should be deemed as among themselves, co-sureties, all equally contributary. And on that hypothesis, Breckinridge should equally divide the *112 burthen which was imposed on Taylor, if it appear that no one of the other sureties is able to make any contribution; for the doctrine of contribution in equity, among co-surities, is founded not so much on an implied promise by each, severally, to each, to contribute his distributive ratio in the event of the inability of the principal, as on the equitable principle of distributing a common burthen equally among those who are able to bear it—a principle of justice and equality recognized by both the civil and common law. Herbert's case, 3 Coke, 11; Deering vs. Earl of Winchelsea, 1 Coxe's cases, 318; 2 Bosanquet and Puller, 270; 1 vol. Law Library, 161; Campbell vs. Mesier & Dunstan, 4 Johnson's Chy. Reps. 334; Evans' Pothier, 2 vol. 78. And, in such a case, if the liabilities be to the same party, for the same principal, and to the same extent, as in this case, it is not material, so far as the rate of contribution is concerned, whether the sureties were bound jointly or severally, or by the same or by distinct undertakings. This results, as a necessary consequence, from the equitable principle just suggested, and is abundantly confirmed by authority. In the case of Deering vs. Winchelsea (supra,) Edward Deering, the Earl of Winchelsea; and Sir Thomas Rous were severally bound in the same penalty, but by different bonds, as sureties for Thomas Leering, as Receiver of the Customs; and nevertheless, it was decided that, one of the sureties having been compelled to pay the whole of a sum for which the collector became liable, and the principal and one surety being insolvent, the burthen should be equally distributed between the two solvent sureties: and a former case of Peter vs. Rich, Ch'y Rep. 35, was referred to, as recognizing the same equitable principle of equality between such co-surities.
So far as there may have been official delinquency after the date of the last bond, it is not only not material, as to the extent of Breckinridge’s liability as a co-surety, that his and Taylor’s undertakings were several and distinct, but it is equally immaterial whether their bonds were of different dates, or were executed simultaneously. The only decisive question is whether they they were both bound as sureties to the same party, for *113 the same amount, and for the same prospective duties. As they were so bound, they were, in equity, co-surities, as perfectly as they could have been had they been parties to the game bond. The same judgment might, with equal right and justice, have been obtained by the Bank, against either of them, on his separate obligation; and therefore, he upon whom the whole burthen has fallen in the first instance, in consequence only of the Bank’s election, is equitably entitled to precisely the same contribution from the other, as he could have justly claimed, had they been joint sureties in law as well as in equity. There can be no doubt that if, in consequence of a loss of both bonds, or of any other cause applicable to all the obligors in both, a suit in chancery, instead of an action at law, had been brought by the Bank against Pendleton and any of his sureties, it could not have been maintained unless all of the sureties in both bonds had been made parties; because a Court of Equity will not permit a creditor to elect between persons equally bound to him, either jointly or severally, for the same thing and to the same extent. (Cox's heirs vs. Strode, 2 Bibb, and the equaitable doctrine as to contribution, passim.) And, of course, as the Bank could not maintain a joint suit at law on both bonds, but was compelled to sue on only one or the other of them, the election to sue on the first did not absolve the sureties in the last from their preexistent liability to contribution. Nor would a suit and judgment against Breckinridge, on the last bond, have exonerated Taylor from his equitable obligation to contribute. Their equitable rights and responsibilities were, as between themselves, certainly and perfectly co-extensive and reciprocals.
Where divers obligors are bond for the same thing, whether by the same of by different obligations, and the creditor's remedy is in equity, he must make them all defendants; for equity will not permit him to elect among those equally bound to him. And—
If one holds several different obligations, to indemnify him against the same contingency, a recovery at law upon one, will not exonerate the obligors in the others from their liability in equity, for contribution.
Then, Breckinridge is liable to contribution, in equity, to the extent of one half of the sum which Taylor was liable to pay, and actually paid, for any delinquency by Pendleton, whilst they were both sureties—provided all the other sureties are insolvent; for during that time, they, as sureties, stood in equali jure; and there being no proof of any conventional qualification of their mutual liabilities to each other, in foro conscientiœ, each was equally liable in equity, for contribution to the other, *114 for any burthen legally imposed on him, in consequence of their principal’s misconduct whilst they were both guarantors of his fidelity; and equality of burthen being the true equitable criterion of contribution, if Breckinridge be the only surety able to contribute, he should pay one half.
The opinions of the acquaintances of a surety that he is insolvent, corroborated by other circumstances, held to be sufficient evidence of the fact, to exclude him, in a decree for contribution among co sureties, and cast his proportion upon the others.
A decree for contribution, ag’st a co-surety, should include interest on the sum for which he is liable, from the time it was paid by the comp’t till the time of the decree, and also, def’ts, due share of the costs incurred in resisting the creditor’s claim, with interest on it.
The privity between sureties, is not such as to make a judgment against one, evidence, per se, against another; yet, as each is liable for his portion, and might be permitted to defend a suit against another, if one not sued had such notice of a suit as would enable him to defend, the record may be used as evidence against him. And—
*114 And, though there is no conclusive proof of the inabilty of all the other parties except Breckinridge, to make contribution, yet it appears to be almost certain that no one of them is able to contribute any thing: they are deemed insolvent by their acquaintances, and that opinion is fortified by strong circumstances; and this, we think, is sufficient for dividing the burthen, in the first instance, between Taylor and Breckinridge, and thus leaving to each of them an equal right to obtain, hereafter, further contribution, if possible, from others.
We are also of the opinion, that it was proper to charge Breckinridge with legal interest upon a moiety of what Taylor necessarily paid, from the date of the payment to that of the decree. And that, in such a case as this, where Taylor could not have ascertained, either the existence, or the extent, of liability to the Bank, without a suit, and, therefore, was compelled, without any fault or delinquency on his part, to incur costs before he could have shown himself entitled to contribution, it was also right to impose on Breckinridge at least one half the legal costs thus expended.
One half of the original judgment for damages and taxed costs, and six per cent, thereon, from the 6th of January, 1831, to the date of the decree, will make an amount equal to that decreed, if not greater. And if therefore, Taylor was liable to pay, and actually paid, the whole amount of the judgment—a point hereafter to be further considered—the decree against Breckinridge was not exhorbitant, or unjust.
II. We consider the evidence sufficient to show, as against Breckinridge, that the Cashier was justly liable to the Bank, for delinquencies after the date of the last bond, and to the full extent of the judgment therefor, against Taylor.
First. Although there was no such privity between Taylor and Breckinridge, as would make the record of. *115 the suit against the one,evidence, per se, against the other—still we are of the opinion that, Breckinridge being liable over to Taylor for a portion of whatever he was compelled to pay; there was that kind of relation between them, which would have given to Breckinridge the light to defend the suit against Taylor, and therefore, such as to make the record of that suit evidence against him, if he had such actual notice of the pendency of the suit, as might have enabled him to make a full and proper defence on the trial of its merits: and we, also, think that we are authorized to infer that he had such notice; for he virtually admits that Taylor showed him a copy of the opinion of this Court reversing the first judgment, and requested his co-operation in the defence in the Circuit Court, on the trial which was expected after the case was remanded; and it neither appears, nor can be presumed, that any point was settled by that opinion erroneously, or which Breckinridge could have prevented the settlement of, had he been sooner notified; on the contrary,we are bound to infer that, after he received actual notice, he might have made full defence on the merits of the case, and prevented the ultimate judgment if it was not just and according to the law and the facts. He, therefore, should be deemed virtually a party to that suit, so far, at least, as to make the record of it prima facie evidence against him.
Held, that the admission of a party that a copy of an opionion of the Court of Appeals, remanding a cause for a new trial, was shown to him, soon enough to enable him to defend upon the new trial, justifies the use of the record as evidence agains him, in a suit for contribution.
Proof, which, taken in connection with the peculiar phraseology of the answer, is held to be sufficient to establish the fact, that the defalcations of the cashier of a bank, occurred at a time when the respondent was bound for him, and thus fix the liabilty of the surety to a co-surety, for contribution.
Second. If the record of the suit against Taylor be not evidence against Breckinridge, of his being liable to some extent, still there is, we think, other and sufficient evidence to the same effect. Waller, who was the Cashier of the Bank of Kentucky, from the year 1809, until after the date of his receipt to Taylor, in January, 1831, deposed as follows.—“That the judgment obtained by “ the President, Directors and Company, against James “ T. Pendleton and his securities, on his first bond, in “ the Hardin Circuit Court, fell short of the amount “ claimed by the Bank, three or four thousand dollars; and which amount this deponent believes to be properly “ chargeable to the said James T. Pendleton and his “ securities, for money which passed through his hands, “ as Cashier of the Bardstown Branch Bank, and not *116 “ accounted for by him; and that said sum of money, “ thus passing through his hands, occurred subsequent to “ the date of the bond annexed, marked C D (that in which “ Breckinridge was bound.) This deponent further sayeth, “ that the said James T. Pendleton did act as Cashier “ the said Bardstown Branch Bank after the execution “ of the said official bonds, and that the aforesaid defalcations “ occurred whilst he was acting as Cashier “ aforesaid.” And Breckinridge, in’his answer, says—“This “ respondent does not admit the allegation in the bill, “ that the defalcations of Pendleton, for which the plaintiff “ was made liable, were committed after the date of “ the bond in which it is said this defendant is an obligor— “ he has understood the fact was otherwise;” and, in an amended answer, he says, that he has no personal knowledge that Pendleton had been guilty of any defalcation, and therefore requires proof of that fact, and “especially” of the alleged fact, that the defalcation was subsequent to the date of the last bond.
Now, although Waller has said that he thought the Bank was entitled to more than it recovered, yet he should be understood as afterwards averring positively, that an amount of money greater than that for which judgment had been obtained, had passed through Pendleton's hands, as cashier, after the date of the last bond, and had never been accounted for, and that the defalcations for which the judgment was rendered, had occurred subsequently to the date of that bond. And Waller should be presumed to have testified upon his personal knowledge, as the Cashier of the parent Bank. But his testimony, as to the extent of defalcations, is fortified, not only by the fact that, notwithstanding a most obstinate and persevering resistance, a judgment was finally obtained, for alleged defalcations, but also by the fact that, Breckinridge, in his first answer, seems to controvert only the date of the delinquency, and, in his amended answer, requires proof of any defalcation, only because he had no personal knowledge respecting it, but demands proof “especially,” as to the alleged date of it. And even if Waller should be understood as not swearing on his personal knowledge, as to the fact of a defalcation *117 and the extent of it—he certainly has said, in effect, that he did know that, whatever delinquency there may have been, had occurred after the date of the last bond— the only fact which Breckinridge seems to have seriously questioned respecting the alleged breach of official duty
In a suit, brought by one who had satisfied a judgment that a bank had recovered against him, as a surety; against a co-surety, for contribution, the comp’t produces a receipt of the cashier for more than the amount of the judgment ‘paid on a comprome’, in full; and proves by the cashier that the receipt is genuine: tho' this is not evidence of any actual payment, but only, that the cashier had said, (in the receipt,) that so much had been paid; yet, as the presumption is that, the bank would not thus have discharged the debt without payment in full, the receipt is prima facie evidence of such payment—especially, as deft did not question the cashier, when he gave his deposition, as to the mode or amount of payment.
The unexplained fact that, the receipt purports to have been given “upon a compromise,” and is yet for more than was due, is not sufficient to rebut the presumption of payment arising from the receipt itself. If the terms of the receipt would justify the conclusion, that property, and not money, was taken in satisfaction of the judgment, it would not justify the inference, without proof, that it was taken at an exorbitant price, and the debt thus discharged upon a partial payment only.
From these facts, we feel bound to conclude that there is, without the aid of the record of the judgment, sufficient proof to show, as against Breckinridge, in this case, that the judgment was proper, and that the delinquencies for which it was rendered, occurred after the date of the bond in which he himself was bound. It would be difficult to exhibit stronger evidence of such facts, in a controversy altogether collateral, like the present; and this should, we think, in the absence of any opposing evidence, be deemed sufficient for all the purposes of this suit.
III. The consequence of the foregoing view of the case is, that the decree is not for more than Taylor was entitled to, if he paid off the judgment, and the whole amount of it.
The only positive evidence respecting this point, is that contained in Waller’s deposition. He proves the genuineness of a receipt, purporting to have been given by himself, as Cashier, to Taylor, on the 6th of January, 1831, for seven thousand five hundred and eighty-five dallars—paid on a compromise, in “fall satisfaction of the judgment.”
As Waller does not say, in his deposition, that Taylor had actually paid seven thousand five hundred and eighty-five dollars, or any other sum, but states only that he had said in his receipt to him, that he had paid that amount, on a compromise, there is no positive proof of actual payment—or of the sum actually paid. But the fact that the Bank had exonerated Taylor from the *118 judgment, the presumption that it would not have done so without full payment, and the circumstance that Breckinridge, though he had denied that Taylor had paid the whole amount of the judgment in a full equivalent, did not enquire of Waller, how much had been paid, and whether in money or in property, or on what terms, altogether seem to be sufficient, prima facie, to authorize the inference that the whole amount of the judgment was actually and fully paid. Without opposing proof, we should not feel authorized to doubt that there had been such a payment, had not the receipt shown that there had been some compromise. From this fact, it might be presumed, that, either less than the whole amount had been received, or that the payment had been in property at a conventional price. But which of these deductions should be adopted, is entirely uncertain. Neither of them should, however, repel the presumption of full payment, arising from the circumstances first suggested. The sum stated in the receipt exceeded the aggregate amount due on the judgment; and therefore, if money was paid, the Bank must have erroneously charged, for interest on the damages, or in some other way, more than seven thousand five hundred and eighty-five dollars, and more than was due, and therefore, having agreed to take what it deemed to be less than the sum it was entitled to, the receipt showed that the sum paid had been accepted on a compromise, in discharge of the judgment. But, on this hypothesis, the amount actually paid in money, exceeded that which was due, and Breckinridge has been charged with only one half of the sum to which the judgment entitled the Bank.
But if property had been taken in discharge of the judgment, and therefore Taylor was discharged on a compromise, we have no right to presume, without a single fact tending to such a conclusion, that the property was taken at a fictitious price, to which, by fair agreement, Taylor was not entitled; or, in other words, that, in the compromise, the Bank did not receive nor intend to receive, the full equivalent of its judgment.
We are, therefore, strongly inclined to the conclusion that, the evidence of full payment by Taylor, should be *119 deemed satisfactory. And, upon mature consideration we do not feel authorized, on this ground, to reverse the decree, and remand the case for further inquiry respecting the amount or value of the actual payment.
Wherefore, it is decreed that, the decree of the Circuit Court be affirmed.