6m 292
91 586

6m 292
93 488

6bm 292
112 550

6bm 292
120 442

CHANCERY.    Withers, &c. *vs* Lucy Hickman ; Same *vs* Sally Ann Hickman ; Same *vs* Robert Hickman ; Same *vs* Mariah Hickman.

*Case 59.*    ERROR TO THE LINCOLN CIRCUIT.

*Disbursements.   Guardian and Ward.*

*Oct.* 29.    CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated. THESE several suits were instituted by the infants, by Thomas J. Thurman, their next friend, and statutory guardian, against Withers, their former guardian, who had been removed by the orders of the County Court, for the recovery of the proceeds of their estate, all of which had arisen from the sale of a small tract of land of 100 acres, a grist mill and two acres of ground, and two slaves, made on the petition of Withers, as their guardian, by the decree of the Circuit Court, and the greater part of the proceeds paid into his hands as guardian, by the order of the Court, before his removal. Three persons, Smith, Bosley and Stemmons, had joined with him as his sureties in his bond to the County Court; two of the same persons, Smith and Stemmons, had become bound as his sureties, in the bond which he was required to execute, under the order of the Circuit Court, on the decree for the sale of the land and slaves. These several suits are instituted against Withers and his three sureties, in his bond to the County Court, and decrees rendered in favor of the infants severally. The cases were consolidated in the Circuit Court, and Withers and his sureties have brought the five cases to this Court, by five several writs of error, and they have all been heard together.

Sureties of a guardian are responsible on their bond for proceeds of land &c. sold under a decree and received by the guardian, altho' the
Though the funds arising from the sale of the land and slaves of infants, on the petition of their guardian, under the statutes, are under the control of the Chancellor, and he may and is required to take bond and security from the guardian, for the faithful disbursement of the same, yet this bond is required as a precautionary measure, and as additional security to that which has been taken by

the County Court, and does not discharge the sureties in the County Court bond from their responsibility for the fund, if it has come to the hands of the guardian. All the sureties in both bonds are equally bound for the same, and all may be made responsible to the infants. Nor is there any hardship in rendering sureties in the County Court bond responsible, as the statutes were in force when they executed the bond, by which they were apprised that the lands and slaves of the wards might be sold on the petition of their guardian, and the funds placed in his hands, and the condition of their bond requires that "the guardian shall diligently and faithfully collect, account for and pay to the said orphans, *all the estate* which they *now*, or may *hereafter be entitled to during their minority*, or such other persons as may be entitled to receive the same," &c.

- Nor do we doubt the power of the Chancellor to with-. draw the funds from the hands of the removed guardian, and place them in the hands of the guardian who has been substituted in his stead by the action of the County Court.

The County Court had jurisdiction over the subject, and the power to remove, and their order of removal remaining in full force, and unreversed, authorized the Chancellor, without other cause, to change the custody of the fund which was under his control, as he might deem best for its ultimate security. But, though the fact of the removal of Withers by the County Court might alone justify the Chancellor in withdrawing the fund from his custody, as there is nothing in these records that show for what cause he was removed, or that any cause existed which should deprive him of all compensation for his services as guardian, we think the Chancellor should have allowed him at least the small pittance which had been allowed by the County Court Commissioners. Indeed, we should have felt disposed to allow him a greater amount, considering the amount of money which came to his hands and the services rendered by him. But as the County Court Commissioners had the whole subject before them, and have fixed his compensation, and no exception has been taken to their report, we have concluded that the amount so allowed should stand.

WITHERS, &c.
  *vs*
HICKMAN, &c.

Chancellor may and does take a bond and security from such guardian, under the statute.

The Chancellor has the power to change the custody of a fund from the hands of a removed guardian, and to place them in the hands of the guardian, but compensation should be made to the removed guardian, unless good cause appear against it.

We also think that injustice has been done to Withers and his sureties, in rejecting portions of his disbursements for his wards, upon the ground that they exceeded the income upon their estate.

It appears that the land and mill were valued by Commissioners, under the order of the Chancellor, and were directed to be sold and were sold on a credit of one, two, and three years, with interest from the date of the sale, and bonds were accordingly taken from the purchasers, bearing interest as aforesaid. Both the land and mill commanded the estimated value fixed upon them by the Commissioners. The slaves were sold on a credit of one and two years, and bonds taken bearing interest from their date, for the purchase money, and no doubt commanded their full value. The accumulated interest upon all these bonds should have been treated by the Chancellor as profits, and to their extent at least, Withers' necessary disbursements, for the support, clothing, and education of his wards, should have been allowed.

And further, we have no doubt that in relation to funds arising from the sale of lands and slaves under the order of a Chancellor, that upon the application of the guardian and a proper case made out, that the Chancellor, might authorize and direct disbursements for the benefit of the infant, not only in anticipation of the profits, but even out of the principal. The statute expressly provides "that the Court shall have full power and authority, from time to time, upon the application of the guardian or next friend of such infant or infants, to order and decree the proceeds of such sale or sales, to be *disposed* of, and *appropriated* in such *manner* as may *appear* to them most consistent with equity, and the *welfare* and *interest* of *such infant or infants.*" We cannot doubt from the broad authority conferred, that the Chancellor might, upon proper application, in the exercise of a sound and prudent discretion, direct, from time to time, the disbursement of portions of the principal fund, for the necessary and economical maintenance, support, and education of the infant, even to the consumption of the whole amount.

It may be much better for infants, in many cases, and redound more to their advancement in future life, and especially females, to be reared and clothed in economical plainness and decency, and receive a reasonable education, though it may consume their entire patrimony, than to be bound out to trades or permitted to grow up in ignorance, and without the necessary clothing or means to inspire them with self respect or introduce them into decent society.

·The Chancellor should act in their behalf, when applied to, in *loco parentes*, in the application of their funds under his control, to their *best interest*, in view of all the circumstances attending their *present condition and future prospects in life.*

But we have doubted the propriety of permitting the guardian, without the *previous* direction of the Court, to make disbursements for the benefit of his wards, beyond the income or profits upon their estate. Certainly if he be allowed to do so, his disbursements should be rigidly scrutinized by the Chancellor, and only such should be allowed to him as credits, which the Chancellor, in the exercise of a sound and prudent discretion, would have certainly directed, in case application had been made to him before the expenditure was made. But we are inclined to the opinion that such disbursements should be allowed. If the guardian has done that which the Chancellor would certainly have directed, if applied to beforehand, we can perceive no good reason why the guardian should be made to forfeit his claim to an allowance for necessary, proper, and economical disbursements, made for the benefit of his wards, upon the ground merely that he had made them without asking the previous direction of the Chancellor, or why, in the adjustment of his accounts, he should not be allowed a credit, to the extent at least, of those that the Chancellor would have felt constrained to direct, had he been before applied to.

Applying the principles indicated to the cases before us, we would remark, that we are not able to determine from the accounts exhibited, of the disbursements that were rejected by the Court, or the proof in the cause, whether all of them were necessary and proper, within

But guardian who has made disbursements beyond the income, should have his vouchers rigidly scrutinized by the Chancellor before allowed.

the rule intimated, and should have been allowed or not. Some of them appear to be for tuition fees, others are for store accounts, and may have been in part for books and stationery, and others for clothing, all of which may have been necessary and proper to enable the infants to obtain a plain and useful education, and such as the Chancellor most assuredly would have advised. Other items in the accounts may have been equally necessary and proper, and demanded by the best interest of the infants, and such as a prudent, economical, and discreet parent would sanction and approve, if living. All such should have been allowed, though they may exceed the interest or profits upon the estate.

It is, therefore, the opinion of the Court, that the decrees in the five several cases, be reversed and cause remanded, that a further enquiry may be made in relation to the character, object, and nature of the rejected disbursements, by an auditor or otherwise, and further proceedings had and decree rendered as indicated in this opinion, and the costs in this Court are divided.

*Harlan & Craddock and Kincaid* for plaintiffs: *Letcher & Tilford* for defendants.