WOODWORTH and Others *v.* BOWES.

*A.* and *B.* owed *C.,* and gave their note for the amount of the debt, with *D.* as surety thereon. *C.* sold and indorsed the note to *E.* To obtain further time for payment, the principals proposed to give a new note with *D.* and one *F.* as sureties. *E.* declined giving up the old note, and receiving the

new one in its stead, unless *C.* also would become a party to the new note. He thereupon signed it *C.* "as security." *Held*, that *C., D.* and *F.* were co-sureties.

ERROR to the *Laporte* Circuit Court.

STUART, J.—Bill in chancery to enforce contribution among sureties.

*Alden Bowes*, the defendant in error, filed the bill. He alleges that one *Case* held a note for 321 dollars, in which the firm of *Bowes* and *Noyes* (composed of *William Bowes* and *Edward Noyes*) were principals, and *Lewis Woodworth, John R. Bowes* and *Alden Bowes* were co-sureties. That after judgment against all the parties and execution thereon, he, *Alden Bowes*, was compelled to pay the amount, with interest and costs. He therefore prays contribution, &c., from his alleged co-sureties, *John R. Bowes* and *Woodworth*.

*John R.* answers, alleging payment of his share to *Alden* before suit brought.

*Woodworth* answers, admitting the note, the parties to it, and the legal proceedings thereon, but not the payment of the judgment by *Alden Bowes*. He denies that *John R.* and *Alden Bowes* were his co-sureties as alleged in the bill, but insists and sets up that they, together with *Bowes* and *Noyes*, were principals, and he, *Woodworth*, the sole surety for all the other parties. In support of this, he gives in detail the history of the note: that *Bowes* and *Noyes* owed *Woodworth*, for which they gave their note, with *Alden Bowes* as surety. This note *Woodworth* sold and assigned to *Case*. To obtain further time, *Bowes* and *Noyes* proposed to give a new note, with *John R.* and *Alden Bowes* as their sureties. But *Case* declined giving up the old note, on which was *Woodworth's* indorsement, unless the latter would also become a party to the new note. Accordingly, he signed it "*Lewis Woodworth,* as security;" and the old note was given up. On this new note, the *Case* judgment was recovered.

The evidence fully sustains the history thus given of the last note, and the parties to it.

The only question presented by counsel is, was *Wood-*

*worth* the sole surety, and the other parties principals, as claimed in the answer? or were *Bowes, Woodworth* and *Bowes* co-sureties? The Court below took the latter view of it, and decreed contribution.

There is no brief filed for *Alden Bowes.*

We are referred in argument to only two reported cases, which are not accessible, and which counsel do not claim to have examined, further than the digest. The *syllabus* is thus: "Where a party signs a note as surety for another, and a third person also affixes his name, adding 'surety for the above,' the first surety can not, upon payment of the note, compel contribution against the second surety, unless it is made satisfactorily to appear that the second surety intended to place himself in the relation of co-surety with the first." 1 U. S. Digest Sup. p. 417, No. 39; and there the reference is to 4 Dev. and Batt. 404. The other case cited from the digest is 2 Halstead 71, and is equally inaccessible to the Court. Hence the necessity of the 29th rule (1). The reason of the rule is, that the state has not furnished her Court of last resort with a law library; and we can not hazard decisions on the accuracy of digests. If counsel would avail themselves of the reports of other states, they must, under the rule, either furnish the report or an accurate copy of the decision cited. To both counsel and Court the mere digest, in the absence of the report itself, is but a light to lead astray. A digest is no authority, and was never intended to be. Such compilations are simply useful in a law library to facilitate research. Beyond that they tend to impair the accuracy of judicial proceedings, and involve the reputation of both Court and counsel. Until the state, therefore, has furnished us the means of consulting authorities, the rule must be rigidly enforced.

Yet without the facts of the *North Carolina* and *New-Jersey* cases before us, sufficient appears to distinguish them from this. For the word "surety" added to *Woodworth's* name, more easily and naturally refers to the real principals, *Bowes* and *Noyes*, than to all the parties as principals. As to this very debt, *Bowes* and *Noyes* were

Nov. Term,
1854.

WOODWORTH
v.
BOWES.

originally *Woodworth's* debtors.  He knew the considera-
tion passed directly from him to them.  He knew that they
were principals, *Alden* and *John R. Bowes* sureties.  If he
meant to stand in any other relation than co-surety, he
should have used apt words to designate his intended
position.  The word "surety" simply was not sufficiently
definite for that purpose.  Whether he had signed his
name with or without that word, was, in this instance,
wholly immaterial.  He was a co-surety either way.  Even
in the light of the references made, if he intended to treat
all the other parties as principals, himself the sole surety,
he should have added some such words as " surety for the
above."

It seems that whenever several persons are sureties,
bound for the discharge of the same duty, they stand in
the relation of co-sureties, and are liable to contribution.
*Warner* v. *Price*, 3 Wend. 397.—*Breckenridge* v. *Taylor*,
5 Dana 110.  Nor will their becoming sureties at different
times, without the knowledge of each other, or even by
different instruments, affect their obligation.

There is a recent case in the *New-York* reports very
similar to that at bar.   There the note adduced in evi-
dence reads: " One year after date, we jointly and severally
promise to pay to the order of *Olive Eldridge*, one thou-
sand dollars," &c.  It was signed by *Shryver* and *Aiken*,
*R.* and *N. Norton*, and *J. H. Coons.*  *Aiken & Co.* were the
principals, for whose benefit solely the loan was negotiated.
The other parties were sureties.  The Messrs. *Norton* were
sued by the payee and compelled to pay the note, the prin-
cipals being insolvent.  And the *Nortons* sued *Coons* as
their co-surety for contribution.

*Coons* offered to prove in defence, that the note to Miss
*Eldridge* was signed by the *Nortons* at the request of
*Aiken & Co.*, as sureties, without any knowledge on the
part of the *Nortons* that *Coons* was to be a party to it;
that Miss *Eldridge* declined to take the note without
*Coons's* signature; that the principals, *Aiken & Co.*, repre-
sented the *Nortons* as responsible; that they only wanted

Nov. Term, 1854.

THE STATE v. YOUMANS.

his name to satisfy Miss *Eldridge;* and that upon these considerations he reluctantly signed the note.

Under the mode of practice peculiar to that state, the Court held these facts no defence, and excluded the evidence. In the Supreme Court, the motion for a new trial was overruled, and judgment was rendered on the verdict. The Court of Appeals affirmed the judgment, holding *Coons* to stand in the relation of co-surety and liable to contribution. *Norton* v. *Coons,* 2 Selden 33.

Nor is the authority of this case impaired by the dissent of *Foot,* justice. His dissent did not touch the main question. It related solely to a collateral point, as to the introduction of parol evidence.

We are therefore of opinion that *Woodworth's* position was that of a co-surety, and that he is liable to contribute.

*Per Curiam.*—The decree is affirmed with costs.

*J. B. Niles,* for the plaintiff.

*J. W. Chapman,* for the defendant.

(1) The rule referred to is as follows:

"The volume containing any case cited in a brief, must be placed within the reach of the Court, or the opinion in the case, or such part of it as is relied on, must be accurately copied, with the statement of the facts on which it is based, and so much of the context as forms a qualification of or exception to it."