8bu 542
112 549
112 550

CASE 21—PETITION EQUITY—JANUARY 23.

# Elbert v. Jacoby.

### APPEAL FROM FAYETTE CIRCUIT COURT.

1. CONTRIBUTIONS BY SURETIES OF GUARDIANS IN COUNTY AND CIRCUIT COURT BONDS—LIABILITY EQUAL.—E. became surety for a guardian in his bond executed in the county court when his ward had but little estate. Afterward the guardian procured a decree for the sale of his ward's land, and J. became his surety in his bond executed in the circuit court, as required by chapter 86 of the Revised Statutes. After receiving the proceeds of the sale of his ward's land the guardian became insolvent. The ward recovered of the surety E. on the county-court bond the whole amount due from his guardian. E. then sued J., the surety in the circuit-court bond, to recover an amount equal to the proceeds of the sale of the land, claiming that the latter alone was bound for such proceeds. *Held*, that the sureties E. in the county-court bond and J. in the circuit-court bond are equally liable for the proceeds of the sale of the land, and that J. is liable to E. for only one half of the amount paid by him on account of such proceeds.

2. By the execution of the county-court bond the guardian assumed liability for the personalty of the ward, and the rents and profits of the realty, or such as might come into his hands as guardian.

3. A guardian has no power to sell the land of his ward except in the manner prescribed in the statute, and when this proceeding is complied with, and the land converted into money, the guardian alone, after it passes from the control of the court, is entitled to receive it. (Revised Statutes, sec. 2, art. 6, chap. 86.)

4. The bond of the guardian, as well as the law prescribing his duties and obligations to his ward, does not authorize the chancellor, when called upon to settle the accounts between the ward and his guardian, to make inquiry as to the manner in which the guardian has come into the possession of money or property belonging to the ward.

    If it is the property of the ward, and in the hands of the guardian, he must account for it.

5. The bond taken in the circuit court in a proceeding for the sale of infant's real estate is a precautionary measure, as additional security

Elbert v. Jacoby.

to that taken in the county court, and does not discharge the surety in the county-court bond if the money comes into the hands of the guardian.

All the sureties in both bonds are equally bound, and all may be made responsible to the infant as joint sureties.

C. D. CARR, . . . . ⎫
KINKEAD & BUCKNER, ⎬ . . . . . . . For Appellant,
JOHNSON & BROWN, . . ⎭

CITED

6 B. Monroe, 292, Withers v. Hickman.
6 B. Monroe, 560, Taylor v. Taylor's ex'r.
Revised Statutes, chapter 86.

R. T. DAVIS, . . . . . . . . . . . . For Appellee,

CITED

24 Pick. 270, Commercial Bank v. Cunningham.
11 B. Monroe, 400, Teeter v. Pierce.
6 B. Monroe, 292, Withers v. Hickman.
6 B. Monroe, 560, Taylor v. Taylor's ex'r.
5 Dana, 110, Breckinridge v. Taylor.
5 Dana, 157, Bosley v. Taylor.
2 Wendell's Equity, 597, Bell v. Jasper.
2 Metcalfe, 199, Taylor v. Munn.
1 Leading Cases in Equity, 103, 135, 142.
2 Parsons on Contracts (1st edition), 146.
7 Dana, 310, Morrison v. Poyntz.
2 Dana, 296.    3 Met. 115.    1 Duvall, 220.
Revised Statutes, article 6, chapter 86.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

In November, 1847, John L. Elbert was appointed by the County Court of Fayette statutory guardian for the infant children of George W. Harp, deceased, and executed bond for the faithful discharge of his duties as such, with Pollard Elbert, the appellant, his surety. At the time John L. Elbert executed this bond as guardian the infants were possessed of but little personal estate, and the liability of the surety at that date was merely nominal.

On the 18th of February, 1856, the guardian of these infants filed his petition in equity in the Fayette Circuit

Court, asking a sale of some real estate belonging to his wards; and, having complied with the requirements of the statute in such cases, obtained a judgment and had the land (the tract containing forty-one acres) sold. In this proceeding for the sale of the land the guardian, on the 14th of March, 1856, executed bond with the appellee, Jacob Jacoby, his surety, conditioned that the guardian "would faithfully discharge all his duties under the act of the legislature for the sale of the real estate of infants, and under any order or decree of the Fayette Circuit Court in pursuance thereof."

The tract of land was sold at fifty dollars per acre, and the proceeds of the sale, after paying the expenses, paid over to the guardian. This guardian (John L. Elbert) soon after the payment of this money to him became insolvent, and on the 5th of February, 1862, executed to Jacob Jacoby, his surety in the bond executed in the circuit court for the sale of the infants' land, a deed of trust conveying to him all of his estate for the benefit of his creditors.

This trust was not fully executed by the appellee, Jacob Jacoby, and the present appellant, Pollard Elbert, was, for reasons appearing in the record, substituted as trustee in room of Jacoby, and thereupon, by an equitable proceeding in the Fayette Circuit Court against the beneficiaries in the deed, he asked for a settlement of the trust estate, and a distribution of the proceeds according to the rights of the parties. In January, 1863, the infant children of George W. Harp, by their next friend, as well as those who had arrived at age, instituted their suit in equity against the appellant, Pollard Elbert, as surety of their guardian, John L. Elbert, on the guardian's bond executed in the county court, and against Jacob Jacoby, the surety of their guardian on the bond *executed in the circuit court for the sale of their real estate,* alleging the insolvency of their guardian, his failure to settle and pay over their moneys due them, and asking for a judgment

against his sureties on the two bonds for the amount found due them by the settlements of their guardian in the county court. Process was only served on Pollard Elbert, the appellant in this case, and the surety in the bond executed in the county court, and a judgment was rendered against him for the amount found due by the guardian.

In this judgment against Pollard Elbert was included the amount of the proceeds of the sale of the forty-one acres of land sold under the proceeding in the circuit court. Pollard Elbert, the appellant, instituted the present action against Jacob Jacoby, the surety in the bond executed in the circuit court, in order to obtain a sale of the infants' land, alleging that as between him and the appellee Jacoby he is not liable for the proceeds of the sale of the infants' land by reason of his having executed the bond as surety in the county court, and having paid the same he is entitled to recover the whole of it back from the appellee, whose liability originated by reason of the execution of the bond in the circuit court, and by virtue of which this real estate of the infants was converted into money.

We are not aware of any adjudication by this court involving the rights of sureties in such a case as the one we are now considering. At the time of the execution of the bond by the surety of the guardian in the county court he assumed a liability as such for the personal estate of the ward, and the rents and profits of the realty, or such as might come into his hands as guardian. A guardian has no power to sell the land of his wards except in the manner prescribed in the statute, and when this proceeding is complied with, and the land converted into money, the guardian alone, after it passes from under the control of the court, is entitled to receive it.

By sec. 2, art. 6, chap. 86, 2 Revised Statutes, it is enacted "that the proceeds of the sale of infants' lands shall be paid

VOL. VIII.—36

over to his guardian," etc.; and by sec. 15, art. 2, chap. 43, 1 Revised Statutes, it is enacted "that the guardian and his surety shall be liable on their covenant for all property or money which comes to the hands of the guardian as such, whether by virtue of an order of court or of any statute passed after the date of their covenant, or otherwise." The bond of the guardian, as well as the law prescribing his duties and obligations to his ward in relation to the ward's estate, does not authorize the chancellor, when called upon to settle the accounts between the infant and his guardian, to make inquiry as to the manner in which the guardian has come into the possession of moneys or property belonging to the ward. If it is the property of the ward and in the hands of the guardian, he must account for it.

This court, in Withers v. Hickman (6 B. Mon. 292), decided that the bond taken in the circuit court for the sale of the infants' real estate was a precautionary measure, *and as additional surety to that taken in the county court*, "and does not discharge the sureties in the county-court bond if the money comes into the hands of the guardian. All the sureties in both bonds are equally bound for the same, and all may be made responsible to the infants." The law as it existed at the time the appellant became surety in the county court authorized the guardian to apply to the circuit court for the sale of the infants' land, and also authorized the guardian to receive the money. The appellant knew of the existence of this law, as well as the power conferred upon the guardian by the execution of the bond upon which he was liable as surety. In the absence of the execution of such a bond the relation of guardian and ward would not have existed between John L. Elbert and the infant children of George W. Harp. All the rights, powers, and duties of the guardian were assumed by reason of this statutory obligation.

The bond of the guardian in the circuit court was not

Elbert v. Jacoby.

intended as a release of the covenant executed in the county court; it was required as an additional security for the ward's property, and the reason for this additional bond is very obvious.   The guardian in the county court being required to execute bond only for the value of the personal estate and the rents of the land, does not always provide himself with such surety upon his covenant as is responsible in property for the value of the ward's lands, and therefore, the better to protect the rights of the infant, the guardian is required to give an additional bond in the circuit court for the proceeds of the sale of the land.   After this sale is made the bond executed by the guardian has answered its purpose, and the money is paid over to the guardian, and becomes a part of the general estate of the ward for which the original surety is liable.

It is true that a sale of this land could not have been made without the execution of the bond in the circuit court, and that the liability of the surety in the county-court bond was greatly increased by reason of the sale; but this mode of reasoning, if it releases the surety in the county-court from responsibility to the surety in the circuit court, would also release the surety in the county court from any responsibility to the infants.   His liability, however, is created and fixed when, by becoming surety upon the guardian's bond, he invests the guardian with the power to institute this special proceeding for the sale of the land, and to receive the money not as agent or commissioner of the court selling the property, but as guardian of the infants.   It might be argued in behalf of the surety in the circuit court that as his liability was incurred merely to enable the guardian to sell the land, and that as the proceeds had been paid over to the guardian as such in accordance with the statute, that the surety on the guardian's bond thereby became alone liable for its payment. The object, however, in taking the last bond was to secure the infant, and not to relieve or lessen the liability of the sureties

on either bond. The last bond is the additional security required by law, and the liabilities of these sureties on the different bonds, although executed at different times, as between each other, must be made equal so far as the proceeds of the land is concerned. The first bond—viz., the one executed in the county court—embraces a much greater liability than the bond in the circuit court; but so far as the proceeds of the sale of this land are concerned the sureties on each bond are liable to the same parties for its payment, and a judgment could have been obtained by the infants upon either bond for the full amount realized from the sale.

In the case of Breckinridge v. Taylor (5 Dana, 110) Pendleton, as cashier of the Bardstown Branch of the Bank of Kentucky, executed to the president and directors of the bank two bonds for the discharge of his duties as such—the first bond executed in the year 1815, and the second bond in the year 1818. In the controversy between the sureties upon each of these bonds the court says: "That so far as there may have been any official delinquency after the date of the last bond, it is immaterial whether these bonds were of different dates or were executed at the same time, and that, although they were sureties in two separate bonds, as between themselves they were co-sureties, and all equally contributary."

This court has heretofore decided that in such a case as this the security on either bond was liable for the whole debt to the principal. If so, they must contribute equally to its payment.

In the present case the appellant and appellee must be regarded as joint sureties, both in law and equity, for the debt. The present appellant, in his reply to the answer and cross-petition of Jacob Jacoby, states "that John L. Elbert, in the year 1862, transferred and assigned to him all of his claims on one Richard W. Elbert, for the purpose of indemnifying him in his liability as his surety in the guardian's bond

of Harp's heirs, and for other liabilities." What these other liabilities were does not sufficiently appear in this record; and it was the duty of the appellant to have made some disclosure of the manner in which he appropriated the proceeds of this assignment. He had no right to appropriate the whole of what he realized from Richard W. Elbert's estate to the payment of all his liabilities for John L. Elbert, excluding his liability on the guardian's bond, so far as it may affect the rights of the appellee in this case, upon the question of contribution. If the amount realized from the assignment failed to indemnify him fully, he must apportion it between or in the discharge of his several liabilities, giving to the debt due upon his guardian's bond its *pro rata* distribution of the proceeds. (Clay v. Goodloe, 6 B. Monroe, 236.)

The appellant is not liable for the advanced price obtained by him on the house and lot purchased as the property of John L. Elbert. He was no party to the suit brought by the purchaser to enforce the lien, and was not made trustee until after the judgment was rendered. It is also shown by proof that he paid a full and fair price for the property at public auction, and was in nowise instrumental in procuring the sale of the property.

The record in this case is very unsatisfactory in regard to the liabilities of Pollard Elbert for and on behalf of John L. Elbert. He, however, is entitled to contribution from the appellee so far as the proceeds of the sale of the land is concerned; and the case should have been referred to a commissioner to ascertain the amount realized by appellant from the estate of John L. Elbert that should have been applied to the total indebtedness of the guardian, and when this was ascertained to apply the *pro rata* portion of the same as a credit on the land debt. The commissioner should also be directed to ascertain the amount of money received by the appellant from the assignment of the claims on G. W. Elbert,

and the amount of appellant's liabilities for John L. Elbert, including the whole of his liability as surety on the guardian's bond; and when this is ascertained the whole debt arising by reason of appellant's liability on this bond should be credited by its *pro rata* portion of this W. G. Elbert fund; and in thus crediting the debt due on the guardian's bond the *pro rata* portion of this credit must also be applied to the liability of the sureties in the sale of the land. After entering these credits the petition alleges that the appellee has contributed or paid one thousand dollars on appellant's demand, in October, 1865. If this amount is not his full portion of the liability, he must pay until he contributes equally with the appellant.

As the appellant has failed to make such an exhibit as he should have made of his accounts and liabilities with and for John L. Elbert, and on this account is in default, he must pay the costs of the reference and settlement by the commissioner.

The judgment of the court below is reversed, and cause remanded for further proceedings consistent with this opinion.