# United States Fidelity & Guaranty Co. v. McGinnis' Administrator.

(Decided April 17, 1912.)

## Appeal from Henry Circuit Court.

1. Principal and Agent—Authority of Agent—Power of Attorney.—
A power of attorney conferring authority will be strictly con-

strued, and will be held to include only those powers which are expressly given, and those which are necessary, essential and proper to carry out those expressly given.

2. Same—Guaranty Companies—Power of Agent to Contract.—A local agent of a guaranty company, authorized by power of attorney to sign, execute and deliver on its behalf bonds in judicial proceedings, and also having authority to solicit business from persons desiring to execute bonds, has no authority to bind his company by an agreement with a third party that if he will go upon the bond of a master commissioner while the bond to. be executed by his company is being prepared, he will be released from all liability as soon as the company's bond is executed and accepted by the court.

3. Same—Sureties—Contribution.—The liability of co-sureties of a master commissioner on separate bonds is not affected by the number of bonds executed by each. Therefore, where one surety executes three bonds and another one bond, they are equally liable for any subsequent defalcation, and as between themselves each is liable for one-half of the defalcation.

4. Same.—The question of contribution is not affected by the fact that one is a surety for compensation, while the other is a surety for accommodation.

TURNER & TURNER for appellant.

MOODY & BARBOUR for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On September 21, 1907, J. R. Fears was appointed Master Commissioner of the Henry Circuit Court. On September 24, 1907, he executed bond with appellant, United States Fidelity & Guaranty Co., as surety. This bond was executed on behalf of appellant by Thos. S. Dugan, of Louisville, Ky., its general agent. On October 7, 1908, Fears executed another bond with appellant as surety. This bond was also executed on behalf of appellant by Thos. S. Dugan. On September 28, 1909, Fears executed a third bond as commissioner, with appellant as surety. This bond was executed on behalf of appellant by E. H. Smith and W. W. Turner, pursuant to power of attorney on record in the Henry County Clerk's office. In addition to the foregoing bonds, signed by appellant as surety, it appears that on September 21, 1908, Fears executed a bond as commissioner with I. W. McGinnis as surety.

Fears failed to pay over to divers persons entitled thereto certain sums which came into his hands as com-

missioner. The parties brought suit against appellant and obtained judgment for the respective amounts due them. These amounts appellant paid. They aggregated the sum of $1,689.59. The defalcations occurred after McGinnis became Fears' surety.

Appellant brought this action against appellee to recover contribution to the extent of one-half of said sum. Subsequently McGinnis died, and the action was revived against his administrator. McGinnis defended on two grounds; first, that it was agreed between him and appellant's agent that he should go on Fears' bond temporarily, for the purpose of giving appellant an opportunity to execute another bond, and that upon the execution of the latter bond, he should be released from all liability. Second, that as appellant executed three bonds, and appellee only one, appellee, under no circumstances, should be made liable for a greater sum than one-fourth of the amount of the defalcation. Upon a final hearing, the chancellor dismissed the petition. From that judgment, this appeal is prosecuted.

The record discloses that the appellant is a surety company, engaged in the business of making bonds for judicial and other State and county offices for compensation. It has been engaged in business in the State of Kentucky and in Henry County for many years. E. H. Smith was its local agent, and solicited bonds in Henry and other counties in Kentucky. He, together with W. W. Turner, had from appellant a power of attorney, executed on October 15, 1902, authorizing them to act as its true and lawful attorneys in and for the county of Henry, in the State of Kentucky, for the following purposes, to-wit:

"To sign its name as surety to and execute, acknowledge, justify upon and deliver any and all stipulations, bonds and undertakings given or required in any judicial action or proceedings brought or pending within the aforesaid counties of the said State, or in any judicial action or proceedings over which a United States Court shall exercise jurisdiction.

"It being the intention of this power of attorney to fully authorize and empower the said E. H. Smith, together with the said W. W. Turner, to sign the name of said company and affix its corporate seal as surety to any or all of said stipulations, bonds and undertakings, and thereby to lawfully bind it as fully and to all intents

and purposes as if done by the duly authorized officers of said company with the seal of the said company thereto affixed, and the said company ratifies and confirms all and whatsoever the said E. H. Smith, together with the said W. W. Turner, may lawfully do in the premises by virtue of these presents."

E. H. Smith made arrangements with Fears for the execution of all three of the bonds given during Fears' term as Commissioner of the Henry Circuit Court. Before the execution of the bond executed by appellant in September, 1907, Fears prepared his renewal bond and gave it to E. H. Smith. Smith sent it to Thos. S. Dugan, the general agent, at Louisville, Ky. At the preceding session of the Legislature, an act was passed requiring a specific penalty to be named in the bond. (Kentucky Statutes, section 186d.) Dugan held up the bond until this could be arranged. This change in the bond necessitated some delay. During the delay Fears became uneasy, and applied to appellee to go on his bond.

Appellee, I. W. McGinnis, who gave his deposition shortly before his death, testifies that there was some delay about the indemnity bond, and Fears came to him and asked him to go on the bond temporarily. He then saw E. H. Smith, appellant's local agent, and Smith told him there would be no trouble about it, as he would be liable only until the other bond was executed, and he would then be released from all liability. The agreement between him and Smith was that he should be released by Judge Marshall as soon as the indemnity bond was executed. Had it not been for this agreement, he would not have gone on Fears' bond. His understanding was that Judge Marshall required Fears to execute the bond, and would not wait until the return of the bond proposed to be given by appellant. He had no knowledge of these facts, but obtained the information from Fears. Judge Marshall did not enter any order releasing him from liability, though he understood this would be done. Afterwards, witness wrote to Judge Marshall, but Judge Marshall declined to enter an order releasing him.

Fears testifies that Judge Marshall did not require him to execute another bond. Witness himself took the matter up with Judge Marshall. While the proper bond was being prepared by appellant, he approached Dr. McGinnis and asked him to go on his bond temporarily.

So far as he knew, the only authority Smith had to exe-cute bonds was a power of attorney on record in the Henry County Clerk's office, which he procured and filed with his deposition. All the bonds which he gave as commissioner were executed by Thos. S. Dugan, with the exception of the last one, which was executed by E. H. Smith and W. W. Turner. He paid to the company $40 for the execution of each of these bonds.

E. H. Smith, appellant's agent, testified that he had occupied that relation for about ten years, and was still its agent at the time he testified. He solicited bonds in other counties besides Henry. He arranged with Fears for the execution of the various bonds upon which appellant was surety. Witness then detailed the circum-stances connected with the delay in the bond executed on October 7, 1908. While claiming to have made no agreement with McGinnis to that effect, witness admits that it was his understanding that the bond executed by McGinnis was to be in effect only until the bond was executed by appellant. There was no understand-ing, however, between him and the company to this ef-fect. So far as he knew, the company never had any knowledge that I. W. McGinnis had executed the bond. He believed that when the company renewed the bond, I. W. McGinnis would be released. After he heard of the defalcation, he sent for McGinnis, and told him that he was still on the bond, and asked him to write to Judge Marshall for his release. McGinnis was not well at the time, and witness dictated the letter. The only authority he had to act for appellant was the power of attorney to execute bonds in judicial proceedings. In the case of all other bonds, he had to obtain a special power of attorney. Witness filed with his deposition a special power of attorney from appellant, authorizing him to sign appellant's name and affix its corporate seal to a bond executed by the county superintendent of schools.

Dr. A. G. Elliston, who qualified as administrator of I. W. McGinnis, testified that Smith admitted to him that Dr. McGinnis was on Fears' bond only temporarily, and that he, Smith, told Dr. McGinnis prior to the execution of the bond that McGinnis would be on the bond only for a few days, and would be released from all liability upon the execution of a proper bond by appellant.

Conceding that there is sufficient evidence to show that Smith, appellant's agent, agreed with Dr. McGin-

nis before the Doctor became surety for Fears, that the Doctor should be liable only temporarily; that is, until a proper bond was executed by appellant, and that upon the execution on the latter bond, Dr. McGinnis would be released from all further liability, the question still remains: Was it within the actual or apparent scope of Smith's authority to make and bind appellant by such agreement?

In the first place, it is proper to say that the evidence discloses the fact that appellant not only did not ratify the agreement alleged to have been made by Smith with Dr. McGinnis, but had no knowledge of the fact that Dr. McGinnis was on Fears' bond. That being true, the question of ratification is eliminated from the case.

There is no evidence tending to show that appellant held Smith out as having authority to make the kind of agreement referred to, nor is there any evidence of his ever having made the same or similar agreements with other parties, with the knowledge and acquiescence of appellant. While it is true that the authority of an agent must be determined by the nature of his business and the apparent scope of his employment, and can not be narrowed by private and undisclosed instructions, this rule does not appear where the nature of the business or the circumstances of the case are such as to indicate that the agent is acting under special instructions or limited power.

By section 482, of the Kentucky Statutes, it is provided that no person shall be bound as the surety of another by the act of an agent unless the authority of the agent is in writing, signed by the principal. This section is held to apply to private and official obligations. First National Bank v. Gaines, 87 Ky., 507. Dr. McGinnis was charged with knowledge of this law. Knowing that Smith was the agent for the surety company, this was sufficient to indicate to him that his authority to act was in writing, and imposed upon him the duty of inquiring into the powers conferred upon Smith. Furthermore, Smith acted under a power of attorney. This power of attorney was a recordable instrument, and was of record. It follows, therefore, that Dr. McGinnis was charged with notice of Smith's powers. It is the law that a formal instrument conferring authority will be strictly construed, and can be held to include only those powers which are plainly given, and those which

are necessary, essential and proper to carry out those expressly given. It will be presumed that the principal, in conferring a power intended to confer with it the right to do those things without the object contemplated could not be accomplished, but beyond this the authority will not be extended by construction. Mechem on Agency, section 308.

In Craighead v. Peterson, 72 N. Y., 279, the rule is thus stated:

"A formal instrument delegating powers is ordinarily subjected to strict interpretation, and the authority is not extended beyond that which is given in terms, or which is necessary to carry into effect that which is expressly given. They are not subject to that liberal interpretation which is given to less formal instruments, as letters of instruction, etc., in commercial transactions which are interpreted most strongly against the writer, especially when they are susceptible of two interpretations, and the agent has acted in good faith upon one of such interpretations."

In Harris v. Johnston (Minn.), 40 Am. St. Rep., 312, the court held that a formal instrument conferring authority upon an agent will be strictly construed, and will only include such powers as are necessary and essential to carry into effect those which are expressed.

In Gouldy v. Metcalf (Tex.), 16 Am. St. Rep., 912, the rule is thus stated:

"Authority conferred by power of attorney will be construed strictly, so as to exclude the exercise of any power which is not warranted either by the actual terms used, or the necessary means of executing the authority with effect."

To the same effect is the case of Gilbert v. How (Minn.), 22 Am. St. Rep., 724; Frost v. Erath Cattle Co. (Tex.), 26 Am. St. Rep., 831; Penfold v. Warner (Mich.), 35 Am. St. Rep., 591. It is also held that powers of attorney delegating authority to perform specific acts, and also containing general words, are limited to the particular acts authorized. Gouldy v. Metcalf (Tex.), 16 Am. St. Rep., 912; Frost v. Erath Cattle Co. (Tex.), 26 Am. St. Rep., 831.

Following the rule above stated, it is held that a power of attorney to sell and convey real estate does not confer a power to mortgage, and a mortgage executed under such a power is void. Campbell v. Foster

Home Ass'n. (Pa. St.), 43 Am. St. Rep., 818; Minnesota Stoneware Co. v. McCrossen (Wis.), 84 Am. St. Rep., 927.

In Dugan v. Champion Coal & Towboat Co., 49 S. W., 958, 105 Ky., 821, it was held that a power of attorney executed by defendant, authorizing another to sign his name as surety to a bond for $6,000 in place of a bond for a like amount on which he was already surety, but which was then barred by limitation, did not authorize the agent to execute a bond for the principal and accrued interest of the existing bond, amounting to $8,667; and a bond for that amount executed by the agent was void as to the surety.

Bearing in mind the principles announced in the foregoing cases, we find that the power of attorney given by appellant to E. H. Smith simply authorized him, together with W. W. Turner, to sign its name as surety and execute, acknowledge, justify upon and deliver any and all stipulations, bonds, undertakings given or required in any judicial action or proceedings brought or pending in Henry County, or in any judicial action or proceedings over which the United States Court should exercise jurisdiction. Therefore, Smith's authority is limited. The power to make the agreement with Dr. McGinnis, which was relied upon as a defense to this action, is neither expressly given, nor is it necessary to carry into effect the power to sign, execute and deliver the bonds and undertakings referred to. To so hold would place a surety company at the mercy of its agent, who was authorized only to execute bonds in its name. If he could execute the agreement relied on, then for a like reason and for a like consideration, he could agree with all prior sureties that they should be released from all liability upon the execution of a bond by his company, thus imposing upon the company a liability which it never intended to assume, and did not authorize him to impose. Nor is the case made stronger by the fact that Smith was authorized to solicit business in Henry and adjoining counties from those desiring to execute bonds; for the power to make an agreement with another person intending to go upon an official bond that he should be liable only temporarily, and should be released from all liability upon the execution of a bond by a surety company, can not be implied from the mere power to solicit business. We, therefore, conclude that the making of the agreement in question was not within the actual

or apparent scope of Smith's authority, and is not therefore, binding on appellant.

Nor is there any merit in appellee's contention that he should be made liable for only one-fourth of the defalcation. The doctrine of contribution in equity among co-sureties is founded not so much on the implied promise by each, severally to each, to contribute his distributive ratio in the event of the inability of the principal, as on the equitable principle of distributing a common burthen equally among those who are able to bear it—a principle of justice and equality equally recognized by both the civil and the common law. And in such a case, if the liabilities be to the same party for the same principal, and to the same extent as in this case, it is not material, so far as the right of contribution is concerned, whether the sureties were bound jointly or severally, or by the same or by distinct undertakings. Breckinridge v. Taylor, 5 Dana, 110.

While appellant did execute three bonds, the two last bonds were merely cumulative, and did not add in the least to appellant's liability. These bonds were executed simply because the statute requires them. Being liable upon one bond just as much as on three, we fail to see how the number of bonds executed by appellant can in any way affect the question of contribution. Appellee being a co-surety, and, therefore, equally bound with appellant, it follows that appellant, which has paid the amount of the defalcation, is entitled to recover of appellee half of the sum so paid, with interest. Breckinridge v. Taylor, 5 Dana, 110; Bosley v. Taylor, 5 Dana, 157; Withers v. Hickman, 6 B. Mon., 292; Cobb v. Haynes, 8 B. Mon., 137; Elbert v. Jacoby, 8 Bush, 542; Ketler, et al. v. Thompson, 13 Bush, 288; Barker v. Boyd, 71 S. W., 528, 24 Ky. Law Rep., 1393.

While it is true that appellant is engaged in the business of furnishing bonds for compensation, and did receive compensation for the three bonds executed for it for Fears, while appellee went on Fears' bond merely as a matter of accommodation, we conclude that the question of contribution is not affected by the fact that one of two co-sureties is a surety for compensation, while the other is a surety for accommodation. Lewis' Admr., et al. v. The United States Fidelity & Guaranty Co., et al., 144 Ky., 425.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.