JUDGE PRYOR
delivered the opinion op the court.
Bennett Burnam by his last will devised to W. "V. Loving a considerable amount of money, notes, bonds, etc., to be held by him in trust for the exclusive use and benefit of his daughter, Lee Ann, during her life, requiring him to pay the interest annually to her, and. the principal to be paid to her children or their descendants at her death, etc.
In the event of the death of Loving, the trustee, or his refusal to act, the will directs that the judge of the Warren Circuit Court shall appoint one or more discreet trustees in his stead, and to require such bond and security as may secure the due performance of the trust, and said appointment to be renewed from time to time when necessary; in no state of the case was the husband of Lee Ann to be made trustee. By a codicil to this will John Burnam and Michael Hall were appointed trustees in conjunction with Loving. Loving alone qualified as trustee, and in a few years after the testator’s death resigned his office after making a settlement of his accounts.
Lee Ann was a widow at the death of her father, and shortly after married Henry Garnett, who lived only a short time.
After the resignation of Loving the Warren County Circuit Court appointed T. C. Calvert trustee, and the latter gave bond as such with Lee Ann Garnett, the beneficiary of the trust, she being then a widow, and J. W. Calvert his sureties. This bond was executed on the 7th of May, 1863. Lee Ann (Mrs. Garnett), after Calvert’s appointment as trustee, intermarried with John R. Moore. Shortly after this marriage Mrs. Moore and her husband, in June, 1870, filed a petition in equity in the Warren Circuit Court against Calvert, as trustee, and the parties entitled to the estate in remainder, setting forth the trust, and alleging that a large sum of money had passed *360 into Calvert’s hands as trustee, and that he had only made one report of settlement since his qualification as such. They also allege that “ it was not right and proper that Lee Ann, the beneficiary, should have been accepted as surety on Calvert’s bond, and ask to be released therefrom; that J. W. Calvert, the other surety, owned no real estate and but little personal estate, and the trust-fund is insecure. They ask 'that the trust-fund be invested in county bonds, and that the trustee be required to give an additional bond, and Mrs. Moore relieved from liability as surety, etc.
The daughter of Mrs. Moore and her husband file their answer, and reposing more confidence in Calvert, the trustee, than the mother, were not disposed to aid her in having additional security for this fund, although they do not directly contest her right to have it placed in a more secure condition.
The trustee, Calvert, files his answer, insisting upon the liability of Mrs. Moore as his surety, but alleges a willingness to renew his bond with such security as the court may require, but protests against any change being made by which the trust-fund is to be invested in county bonds, etc.
While this suit was thus progressing — viz., on the 4th of March, 1870 — the trustee came into court, and, as the order recites, “ executed a new bond as trustee, with George Lehman as surety, which was approved by the court and filed.” This bond, after reciting the trust created by the will of Burnam and the appointment of Calvert as trustee, reads, “The court now requires a new bond with additional security; now we, Thomas Calvert, trustee, and George Lehman, surety, covenant with the parties interested that Calvert shall faithfully discharge all of his duties as trustee, and shall well and truly hold, manage, control, and pay out the property or funds which may come to his hands or possession as trustee as required by law,” etc. The bond in substance is such a bond as he was required to execute when originally appointed, etc.
*361 Before the termination of this action, it having been referred to a commissioner for a settlement of the accounts of Calvert as trustee with Mrs. Moore, Calvert became bankrupt, fled the country, and was no doubt insolvent when the action was instituted. Potter, the present appellee, was then appointed trustee by the court, and, having executed bond, filed the present action, as trustee for Mrs. Moore and others, upon both of the bonds executed by Calvert as trustee — viz., the bond executed by J. W. Calvert and Lee Ann Moore (the cestui que use) as his sureties on the 7th of May, 1863, and the bond executed by George Lehman on the 4th of March, 1870.
It is alleged in the petition that Calvert has evaded or failed to account for the trust-fund, amounting to near twenty thousand dollars, and a judgment asked against the sureties on each of the bonds for that amount.
On motion of the defendants the cause was transferred to the equity docket. Lehman, the surety in the last bond, admits its execution, but denies any liability on his part except for the trust-fund actually in the hands of Calvert at the date of its execution; alleges that the trustee was then insolvent, and had prior to that time disposed of and squandered the whole fund; that if made liable for any part of the trust-fund, the sureties in the first bond must contribute, insisting that neither of these sureties was discharged upon the execution of the bond by him. Lee Ann Moore answers and says she is not liable in law or equity on the bond executed by her as surety of her own trustee, and if ever liable, that she was released by the execution of the bond with Lehman as surety in March, 1870. Upon the issues thus made the court below adjudged that the sureties on each bond were liable for the trust-fund, and rendered judgment against Lehman therefor, and directed the trustee to withhold the interest accruing on the fund in order to meet Lee Ann Moore’s portion of the judgment, and continued the cause for further determination *362 as to the rights of the sureties. From this judgment the sureties in each bond prosecute this appeal.
The object that Mrs. Moore’s father had in view when he' created the trust for her benefit by this express provision of his will was to secure to her the annual interest upon the fund in controversy for her support and maintenance; and as a means of securing it for this purpose he intrusted the Warren Circuit Court with the duty of selecting a trustee who would faithfully administer and control the trust-fund, and required that tribunal to exact a bond from the trustee for its faithful performance. Calvert was appointed the trustee by the court, and Lee Ann, the daughter of the devisor and the beneficiary for life of the profits from the fund, accepted as his surety. The present trustee, Potter, who has now been selected by the court in lieu of Calvert, brings this suit, in the name of the commonwealth, for his benefit and the benefit of Lee Ann Moore, against Lee Ann Moore, seeking to deprive the cestui que use not only of her income derived from the trust-property, but to make her liable for the whole of the trust-fund. This has been done by the judgment of the court below. The sole object and design of the trust has been subverted, and the principal beneficiary made liable not only to the extent of the loss of her entire interest, but for the whole trust-estate. The trustee institutes his action for Lee Ann Moore against Lee Ann Moore; and although there is no demurrer to the petition, still we must adjudge that the trustee can not maintain such an action against his cestui que use. Whether or not Mrs. Moore can be made liable to those in remainder in an action by them on her bond is a question not necessary now to determine.
The appellant, Mrs. Moore, insists that if she was ever liable by the execution of the bond as Calvert’s surety, that she was released upon the execution of the bond by Lehman; and we think this view of the questions presented is fully sustained by the law and facts of the case. The cases referred to *363 by counsel for the trustee indicate clearly the power of the county court to release sureties in a guardian’s bond under the act of 1797. In the cases of Hutchcraft v. Shrout’s heirs (1 Mon.) and Wilborne v. The Commonwealth (5 J. J. Marsh.) supplemental and additional bonds were executed by the guardian, and it was held that the sureties in each bond must bear the burden equally. It does not appear that these bonds were procured to be executed with a view of exonerating the sureties in the first bond, but only as additional obligations to indemnify the justices from responsibility. It was held, however, by the court in each of these cases that the county court could have released the sureties in the first bond by making an. order to that effect at the time of the execution of the supplemental bond.
In the cases of Frederick v. Moore (13 B. Mon.) and Boyd v. Gault (3 Bush) it is adjudged that where one of the sureties in the first bond asks to be exonerated from liability, and at his instance a new bond is executed, he is thereby released, and the remaining sureties on the first bond, having failed to ask relief, must contribute jointly with the sureties in the second bond in discharging the liability of the principal. Under the act of 1797 the county court derived its power to release a surety from this provision of the law, viz.: “Shall order him (the guardian) to give counter-security, or deliver the ward’s estate into the hands of the surety or some other person, taking sufficient security therefor, or may make such other order for the relief of the petitioner as to them shall seem just.” As there was no express power given the court to release the surety by this statute, it was held that the execution of a supplemental bond or an additional bond could only be regarded as a further indemnity in the absence of an order of court releasing the surety.
Chapter 97 of the Revised Statutes (vol. 2, p. 97) provides that when a surety or his representative wishes for good cause *364 to be relieved from further liability as such in the official bond of any officer, etc., he may by notice require him to appear “and give a new bond, with other surety,” etc. Section 2 provides that “if a new bond be given, the surety shall not be bound for any act of the principal thereafter.” Section 3 of the same act provides that the surety of any fiduciary or other person other than a personal representative or guardian, giving bond pursuant to law, “may in like manner be relieved by the execution of a new bond, with other surety. This is the only statute now in force providing for the relief of sureties in fiducial bonds, except the statute in regard to guardians and personal representatives.
This petition of Lee Ann Moore and her husband was filed for the purpose of having the former released from liability as surety on the first bond executed by Calvert. The only power the chancellor had over the case was to require a new bond, or, if the proof authorized it, to take from the trustee the custody of the trust-fund upon his refusal to execute a new bond.
Calvert came into court, and in accordance with the prayer of the petition executed a new bond, with Lehman as surety. This bond was approved by the court and filed. When this was done the object of the action was accomplished, and Mrs. Moore released from liability. It was not necessary that an order of court should have been made releasing her as surety. The execution of the new bond had this effect; and if there had been no reference to the master for a settlement of the trustee’s accounts, the court could only have dismissed the petition.
It is insisted by counsel for Lehman that the execution of the new bond only made the latter liable for the future conduct of the trustee in the control of the fund, and that he is sustained in this by the language of the act under which this proceeding is had, viz.: “ If a new bond be given, the surety shall not be bound for any act of the principal thereafter.”
*365 This court in the case of Watts v. Pettit’s heirs (1 Bush), in the construction of the act of March 1, 1856 (1 Stanton, 481), with reference to the liability of sureties on a guardian’s bond, has in effect decided the questions involved here. The language of that act is, “ If a guardian shall give new bond when ruled to do so by the court, his former security shall not be bound for any act of his thereafter.” It was adjudged that the surety in the first bond was released from all liability upon the execution of the new bond, and could not be made responsible for any act of the guardian prior to its execution. The purpose of the statute is to relieve the surety, and the meaning to be attached to the word thereafter is that his liability no longer continues; that he is upon the execution of the new bond released from all responsibility.
If it was intended by the statute that this bond should only be regarded as an additional security, it would have been so written. The plain purpose of the law is to relieve the surety. The appellant, Mrs. Moore, sought the benefit of its provisions, and as surety is asking to be released. This bond then must either be regarded as relieving the surety entirely or as a bond for counter-security. The latter construction can not be given it, as the statute does not contemplate the execution of any such instrument.
The trustee Calvert, at the time of the filing of this action and during its pendency, was presumed to have the trust-fund in his hands. He could have been proceeded against by rule and required to bring the money into court, and it will not do for his surety, when upon executing the new bond .he has satisfied the chancellor that the trust-fund is secure, and relieved those who made known its danger and were directly interested in having it recovered, to say that the trustee was insolvent when he signed the bond. That is no defense to the action. It was not only the object of Lee Ann Moore to be released as surety, but it was evidently the intention of Lehman that *366 his bond should have that effect; and if not, such is the law. The proposition may be true that in the absence of any statute extending the liability of sureties in a bond it ought to begin only with their undertaking; still here is a statutory regulation determining the liability of the surety, and he must be so held.
The judgment is affirmed as to Lehman and reversed as to Lee Ann Moore, and remanded for further proceedings consistent with this opinion.