CASE 62—ACTION ON GUARDIAN'S BOND—JAN. 30.

## Abshire, &c. v. Rowe, &c.

APPEAL FROM PIKE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL. AFFIRMED.

GUARDIAN AND WARD—EXECUTION OF NEW BOND—LIABILITY OF SURE-
TY THEREON FOR PAST MISCONDUCT OF GUARDIAN—ACTION RE-
QUIRED.

Held:   1. In an action by a guardian for his ward, where more than
one bond has been executed to the ward by a former guardian,
it is not necessary to sue the sureties upon their respective
bonds in separate actions, but one suit may be maintained against
all of them and in the same action.
2. The execution of a new bond by one or more additional sureties
is merely cumulative, affording additional protection to the ward.
3. In the absence of any covenant of indemnity in a new bond to the
motioners in the old one, the liability of all the sureties in all
the bonds for all past liability, is co-equal as if they had all
executed one bond originally.

JAS. M. ROBERSON, FOR APPELLANTS.

The appellees by their guardian S. J. Salyer on Aug. 25,
1898, instituted an action in the Pike circuit court against Jas.
Matney, as the former guardian of appellees, and his sureties
on two separate bonds executed by him at different times, to
recover the sum of $1,666.66 which went into said Matney's
hands as such guardian.   One of the bonds was executed in
September, 1895, with Henry Smith, L. D. Marrs, D. B. Marrs,
J. H. Matney, Nelson Matney and W. M. Connolly as his sure-

ties, and a new or additional bond was executed in March, 1897, with Henry Matney, K. F. Roberson, A. J. Abshire, John Matney, Nelson Matney and J. H. Matney, as his sureties. It is alleged in the petition, that the said James Matney, as guardian, received the $1,666.66 August 7, 1895, and that he did not within a year after his appointment, loan said money, nor had he loaned or invested it at any time prior to the bringing of this action, nor had he paid it or any part of it to the infant wards or any of them, &c.

A demurrer to the petition was overruled and a written motion to compel the guardian to elect which bond and cause of action he would prosecute, was overruled, and the sureties thereupon filed their answer, in which they allege that they ought not to be compelled to pay the sum sued for or any part of it, because, at the execution of the bond upon which they are sought to be charged, the principal, Jas. Matney, as guardian, had no money or property in his hands or any evidences of debt belonging to his wards, nor had he since the execution of said bond, received any money, property or effects, or evidences of debt, belonging to his wards or to their account; that prior to the execution of said second bond, said guardian had converted to his own private use the said sum of money, by using it in his private business, and did not at that time have any part thereof in his possession or under his control; that before the execution of the second bond he had notice to appear before the Pike county court to execute a new bond, and did at the March term, 1897, of said court, execute a new bond which is the second bond sued on, and the sureties in the first bond by order of the court were released from any further liability as the sureties of the said a new bond, and not a bond of indemnity or additional surety on the old bond, and that the sureties in the first bond and those in the second bond, are liable for the sum sued for.

A demurrer was filed to the answer and was sustained.

At the same term of the court, L. D. Marrs, one of the defendants and a surety in the first bond, filed his separate answer, in four paragraphs, to which a demurrer was filed and sustained to all except the fourth paragraph, which alleges, that the guardian, Matney, at the time of the execution of the second bond had not been guilty of any maladministration as guardian, while he, Marrs, was surety on his bond; that the amount sued for was intact in the hands of the guardian at the date of the execution of the new bond, and that the execution of the new bond and the order releasing the defendant in the first, was a bar to any recovery against him. This plea was

held to be good by the court.    This plea was denied by reply.
A trial was had on this issue as between defendant Marrs and
the plaintiffs and a verdict rendered for the plaintiffs, and judg-
ment was then rendered against all the sureties in both bonds
that are parties to the suit.    To this judgment, the appellants,
A. J. Abshire and K. F. Roberson excepted and have prosecuted
this appeal.

### AUTHORITIES CITED.

Sewers v. Havens, 5 R., 856; Clement v. Hughes, 13 R.,
352; Elbert v. Jacoby, 8 Bush, 545; Hutchcraft v. Shrout, 1 Mon.,
208; Welborne v. Com., 5 J. J. Mar., 618; Frederick v. Moore, 13
B. Mon., 172; Middleton v. Hensley, 21 R., 703; Jones v. Hays,
44 Am. Dec., 78; Pool v. Cox, 49 Am. Dec., 410; Withers v.
Hickman, 6 B. Mon., 292; Taylor v. Taylor, 6 B. Mon., 559; Pep-
per v. Donnelly, 87 Ky., 259; Gen. Stats. ch. 48, arts. 1-15;
Rev. Stat., 531; Gen. Stat., ch. 104; Kentucky Statutes, secs.
4659, 4663, 1068.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

One James Matney was appointed guardian for the in-
fant appellees, Rowe, in August, 1895, by the Pike county
court, and executed bond with L. D. Marrs and seven
others as sureties. Thereafter there came to the hands
of the guardian a fund belonging to the infants jointly,
to the amount of $1,666.66. On the 17th day of March, 1897,
pursuant to a notice executed by said L. D. Marrs and
D. B. Marrs, two of the sureties, the guardian was required
to execute a new bond. The notice was for the purpose
only of procuring the release of the two sureties named.
This new bond was executed with appellants, Abshire and
K. F. Roberson and others, as sureties. At the August
term, 1898, of the Pike county court, Matney was removed
as guardian and Samuel J. Salyer was appointed his suc-
cessor, who brought this suit against all the sureties in
both the bonds executed by his predecessor, Matney, alleg-
ing the insolvency of Matney and of the *devastavit* of his
ward's estate, alleging that he had refused and failed to

pay over the amount, or any amount, of the money so re-
ceived by him for them, and had failed to make any invest-
ment of same for them.

Appellants, Abshire and Roberson, sureties on the new
bond, plead that the money received by the guardian was
received before the new bond was executed or required,
and that, likewise, it was squandered and converted by
the guardian before the execution of the bond. They
claim that in consequence of these facts they are not
bound, and they cite and rely upon Boyd v. Withers, 103
Ky., 698 (20 R., 541), (46 S. W., 36), and Jones v. Gallatin
County, 78 Ky., 491, Cassily v. Cochran, 12 R., 119. The
question is, what was the purpose, and what was the effect,
of the new bond? It is argued for appellants that it was
to answer for the faithful accounting by the guardian of
the ward's estate coming to his hands from and after its
date. In Boyd v. Withers, supra, the court held that in
any event the burden was upon the guardian or his surety
claiming exemption, to show where the devastavit was com-
mitted, and in the absence of such showing, a judgment
against any of the sureties would be upheld. In Cassily
v. Cochran, supra, it was adjudged that under the peculiar
facts of that case, the conversion of the ward's estate by
the guardian occurred after the execution of the new bond,
and, therefore, the sureties upon the new bond were unde-
niably liable. The question here presented did not arise,
and was not decided, in either of the cases cited. By sec-
tion 1068 of the Kentucky Statutes, it is made the duty
of the county judge to, at least once in each year, carefully
inquire into the solvency of all the sureties upon the bond
of each fiduciary, and if there is reason to believe that any
bond is not amply sufficient to protect from loss those in-
terested, he is required to give notice to such fiduciary

"that a new bond, or additional surety on the old, is re-
quired, and upon a failure of such fiduciary to give said
bond or surety within a reasonable time to be fixed by
the court, he shall be removed." It is obviously the pur-
pose of this statute to give to the county court a discretion
and invest it with a duty, long exercised by that tribunal
to exact rigid security for the protection of infants
whose estates are committed to guardians. A guardian is
appointed subject to being removed for cause during the
minority of the infant, and the bond first executed covers
that period (Elbert v. Jacoby, 8 Bush, 541).

It not infrequently happens that one or more, or pos-
sibly all, the sureties of this bond become insolvent.
They would not be interested, therefore, in directing the
attention of the county court to derelictions of the prin-
cipal, but the court may require the security to be
strengthened either by requiring additional surety or the
execution of a new bond. In either event, it is the pur-
pose of the court to protect the infant's interest. If the
new bond should take effect only from its date, and the
conversion of the ward's property or other wrongful act,
that may thereafter be complained of, had occurred before
the execution of this new bond, the sureties in the old one,
having become insolvent, then the execution of such new
bond would probably be useless so far as any practical
benefit is concerned. Unless such new bond is executed
or additional surety furnished, it is the duty of the court
to then remove the guardian and appoint another. This
termination of his office, depriving him of its emoluments
and privileges, and requiring of him an immediate settle-
ment and transfer of the ward's assets to the successor,
would all have occurred at the time of the original com-
plaint, except for the execution of a new bond. The re-

sult of such execution is to continue the guardian in office, and to continue his rightful custody and use of his ward's estate, and to prevent, for the time being, an action to require him to account for and pay over what had previously come to his hands. It is what the language of the statute says it is,—"an additional surety." This statute is not new in our law. It has existed in one form or another from the earliest history of the Commonwealth. And under it this court has uniformly held that the execution of one or more additional bonds is merely cumulative, affording additional protection to the infant, and additional security to him that the guardian shall execute and shall have executed faithfully all the duties of his office. Hutchcraft v. Shrout's Heirs, 1 T. B. Mon., 208, 15 Am. Dec., 100; Frederick v. Moore, 13 B. Mon., 472; Elbert v. Jacoby, 8 Bush, 545; Withers v. Hickman, 6 B. Mon., 292; Taylor v. Taylor's Ex'rs, Id., 559; Middleton's Adm'r v. Hensley (21 R., (703), 52 S. W., 974); Sievers v. Havens, 5 Ky. Law Rep., 856. And such is the rule, it seems, elsewhere. Jones v. Hays, 44 Am. Dec., 78; Poole v. Cox, 49 Am. Dec., 410. These cases all hold that the obligation of all of the sureties in all the bonds is coequal and coextensive. It was held in Wilborne v. Com., 5 J. J. Marsh., 617, under the act of 1797, then in force, that county courts had the right, in exercising their jurisdiction requiring additional sureties, to extend the order so as to release former sureties, if, in their judgment, it was thought expedient to do so, but unless, by the terms, the former surety was released, he continued bound for all the acts of the guardian. It was also held in that case that the surety of the new bond was likewise liable for all the acts of the guardian. By section 4659 of the Kentucky Statutes, it is provided that a surety on any official

bond, or bond of a guardian, who wishes to be relieved
from future liability, and to obtain indemnity for such
loss as may have been incurred, or either, may, by written
notice to the principal obligor, require him to appear be-
fore the court in which the original bond was given, to
execute a new bond with other surety, or to effect a dis-
charge of the motioner from future liability, or as indem-
nity for the past acts of the principal, or for both. Section
4663 of the Kentucky Statutes, makes the execution of
such bond a discharge of all the sureties making the mo-
tion for release from all liability for the acts of the prin-
cipal thereafter done; and, if the object be so specified,
the bond shall contain a stipulation or covenant to in-
demnify the surety against any loss already incurred by
reason of the suretyship. In this case it does not appear
that there was a motion for indemnity, and therefore the
sole question is the effect of the execution of the new bond,
not as to the motioners Marrs, but as between the new sure-
ties, the appellant here, and the old sureties who did not
make the motion.    The statute expressly restricts the re-
lease effected by the execution of this new bond to such of
the old sureties as moved for it.  It must follow that the
sureties on the old bond who did not move for the release
were intended by the lawmaking body to be continued up-
on their liability.    As between the motioners and those
executing the new bond, the motioners would be liable
only for such defalcation as had occurred before its execu-
tion; but, as between the other sureties on the old bond
and the sureties of the new, they all stand alike, and upon
the same footing. We could not conclude otherwise, and
be in harmony with the earlier and persistent rulings of
this court upon the effect of such obligations. Had the
new bond contained a covenant of indemnity to the mo-

tioners in the old one, then, as between the obligors in the old bond, making the motion, and the obligors in the new, those in the new bond would have been liable for the whole of the defalcation, whenever committed. In the absence of such covenant, applying the general doctrine above discussed, and assuming that the defalcation occurred before the execution of the new bond, then the liability of all the obligors, sureties on all the bonds, is coequal, as if they had all executed one bond originally. In Watts v. Pettit's Heirs, 1 Bush, 155, the court had under consideration the relative liabilities of sureties on an old and a new guardian's bond, where the new one had been executed under notice such as above provided for. The statute, however, in that case, was materially different in language from our present statute. The language of the statute in that case was, "If a guardian shall give a new bond when ruled to do so by the court, his former security shall not be bound for any acts of his thereafter." 1 Acts 1855-56, p. 111, sec. 1. The court construed that language to exonerate the surety making the motion and requiring the execution of a new bond from all liability from any act of the guardian, whenever committed. Jones v. Gallatin Co., 78 Ky., 491, was a controversy between sureties upon different bonds as to their respective liabilities for a defalcation of a sheriff as collector of revenue. It may well be argued that the sureties upon the sheriff's bond undertook to covenant only against the wrongful acts of their principal within the period covered by their obligation; that is, from the time the bond was executed. Not so, however, as to a guardian's bond. There the guardian obligates himself to the ward by executing a bond to the Commonwealth that he will account for and pay over to the ward all money that has come or may come to his hands by virtue of his office.

Abshire, &c., v. Rowe, &c.

Such is the effect, in one sense, of his undertaking. It is not merely that he will not misappropriate the ward's funds, but that, whenever legally demanded, they will be forthcoming. The covenant 'is broken when default is made upon demand of the ward upon arriving at age, or upon the demand of the guardian's successor if the guardian is removed or otherwise vacates his office, to pay over the balance remaining due the ward. In another sense the breach may be said to have occurred, though not necessarily completed, at such time as the guardian may have converted his ward's estate. Properly, the guardian should not mingle the ward's estate with his own. It should be employed separately, and securities and evidences of debt taken in his name as guardian for the benefit of the ward, though it is not infrequent that guardians do use, and without any improper motive, their ward's money, being solvent, and feeling that they are bound by ample security to make good the same, with legal interest, as required by the statute. They deem it is their privilege to personally use the fund. We are not prepared to say that such use would of itself constitute a breach of the bond. It was doubtless in part for this reason that the earlier decisions of this court, as well as those later, have adopted and applied the rule concerning the general liability of all the sureties upon all the bonds for all of the acts of the guardian during the duration of his office, and until such sureties may be released by appropriate orders of court.

It follows from what has been said that there was but one cause of action in this case, and that it was not necessary to sue the sureties upon the respective bonds in separate actions, but that one suit might be maintained against all of them, and in the same action.

Judgment affirmed. Whole court sitting