## Fidelity & Deposit Company of Maryland v. Husbands, Master Commissioner, et al.

(Decided February 23, 1917.)

### Appeal from McCracken Circuit Court.

1. Trusts—Action Against Trustee for Accounting.—The general rule, which is applied in an action against a trustee for an accounting, is, that when the assets are shown to have been received by him, the burden rests upon him to make a satisfactory accounting of them, and if he does not do so, the doubts and obscurities in his accounts are to be taken adversely to him.

2. Trusts—Action Against Trustee for Accounting.—A trustee must take the burden of all affirmative defenses to an action for an accounting against him, otherwise it would devolve upon the beneficiaries to prove the negatives, which it may be impossible for them to do, because of their want of knowledge of his acts, while he must know of his own acts and the evidence by which they can be sustained.

3. Principal and Surety—Surety Upon Bond of Assignee.—The surety in the bond of an assignee for the benefit of creditors may, by notice and motion, have an order of court requiring the assignee to execute a new bond, indemnifying him against past liabilities, and to release him from future acts of the assignee, but the surety will remain liable to the beneficiaries for the acts of the assignee up to the time of the execution of the new bond.

4. Trusts—Surety Upon Bond of Trustee.—The sureties in the bond of a trustee are responsible for all moneys received by reason of the trust, and for all sums, which, with proper diligence, the trustee could have collected, and for the proceeds of the trust property sold by the trustee, until the money has been paid to those entitled to receive it.

5. Trusts—Surety Upon Bond of Trustee.—Where a surety in the bond of a trustee has, by the statutory method, required the trustee to execute a new bond, and procured an order of the court, which releases him from liability for the acts of the trustee after the execution of the new bond, he will be liable for the assets of the estate, which went into the hands of the trustee before

the execution of the new bond, unless he can clearly show that the assets were intact in the hands of the assignee at the time of the execution of the new bond, and the burden of proof is upon the surety to prove this before he can escape liability, as the obligation of the surety is the same as the principal.

BERRY & GRASSHAM for appellant.

WILLIAM MARBLE and J. G. HUSBANDS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming upon original appeal and reversing upon cross appeal.

The Paducah Building Trust Company was incorporated on the 12th day of January, 1893. It embraced the features of an ordinary building and loan association with those of an investment company. It engaged in the business for which it was organized upon the date of its incorporation and continued until the 27th day of June, 1899, when it made a voluntary assignment for the benefit of its creditors. On the day of the execution of the deed of assignment, the assignee, named in the deed, accepted the trust, and was permitted to and did execute a bond, with the Fidelity & Deposit Company of Maryland, as his surety, in the sum of ten thousand dollars, conditioned that the assignee would well and faithfully and in proper time discharge all of the duties imposed upon him by the deed or by the laws of the land. The bond was executed in the county court, and by an order of the court was duly accepted and approved. The assignee entered upon his duties, and at once took into his custody and control all the assets of the company, which he proceeded to convert into money. The assets consisted principally of loans made upon real estate security; and loans, the security for which was stock in the corporation. The corporation, also, owned real estate, office furniture, certain choses in action, book accounts, and a small amount of cash on hand. The assignee made two partial settlements with the county court, one of which was made on May 7th, 1900, and another on November 30th, 1900, which purported to show the receipts and disbursements made by him between the two settlements, and up to the date of the last settlement. On the 11th day of March, 1901, the appellant, Fidelity & Deposit Company of Maryland, entered a motion in the county court, of which it gave the assignee due notice, to require him to execute a further and addi-

tional bond as assignee indemnifying it for liabilities already incurred, and to release it from further liability upon its bond as surety for him. This motion, by agreement of the parties, was continued and set for hearing on the 25th day of March, 1901. Upon the latter date the county court entered an order sustaining the motion of appellant, and requiring the assignee to execute another bond, with surety to be approved by the court, indemnifying the appellant for the past acts and liabilities of the assignee, and to release it from liability for the future acts of the assignee, and time was given the assignee to comply with the order. On the 15th day of April, 1901, the assignee, with the Aetna Indemnity Company as surety, executed an additional bond, but conditioned as the bond executed by the assignee with the appellant as surety.

On the 23rd day of August, 1901, the assignee instituted an action in the circuit court for a settlement of the affairs of the assignor, and for a final settlement of his trust. In December, 1903, orders were made in the circuit court removing the assignee from the further administration of the trust and appointing the appellee, Gip Husbands, as a receiver of the funds and assets of the assigned corporation, and directing the removed assignee to pay over and deliver to the receiver all the property of the corporation, which he had not theretofore distributed to its creditors and for other proper disbursements. The trustee having failed to comply with the orders of the court, the court, by proper orders, directed the receiver to institute an action against the trustee and his sureties to recover from them the assets and property of the corporation, which the trustee had received, converted to his own use and failed to account for. This the receiver did by the institution of the present action on the 23rd day of December, 1903, against the assignee and the sureties in the two bonds, and in which it was alleged that the assignee had received assets to the value of $117,915.17, and had distributed and accounted for only a portion of the assets received by him, and had converted the sum of $88,237.04 of the assets, to his own use, and prayed a judgment against him for that sum and a judgment against each of the sureties for ten thousand dollars, the amount of the liability of each upon the bond, upon which it was surety. The petition sought a surcharge of the partial

setilements, which had been made by the assignee in the county court. The assignee and each of the sureties answered. The assignee thereafter died, and the action was never revived against his representatives. After a partial preparation of the action, it was submitted for trial and judgment, and a judgment was recovered by the receiver against the sureties for the sum of $3,365.74, with interest from December 23rd, 1903. The sureties and the receiver each excepted to the judgment. The sureties, however, thereafter paid the judgment, but the receiver prayed an appeal to this court from the judgment. This court reversed the judgment, and after determining certain questions of law, which were raised upon the appeal, remanded it with directions to complete the preparation of the case for trial, in accordance with this court's opinion, which may be found in 144 Ky. 93. The opinion held that the receiver was entitled to maintain this action against the sureties in the assignee's bonds to recover the assets of the estate, which remained in his hands undisbursed, and which he failed to deliver to the receiver, in accordance with the orders of the court; that it was the duty of the sureties to see that their principal made a full accounting of the assets and property of the trust in his hands, in obedience to the orders of the court, and that the assignee and the sureties were jointly and severally liable in this action for the default of the assignee in failing to turn over to the receiver the assets of the trust. It was further held, that for the purpose of surcharging the county court settlements, the burden of proof was upon the receiver to show that the items in the settlements were not correct, that is, the settlements should be held to be *prima facie* correct to the extent that they showed items of property received and disbursed. The court further said in the opinion:

"The case should be referred to a commissioner to report the assets that came into the hands of the assignee and the disposition made of them; giving each party the right to file such additional pleadings as they may deem necessary, and take such evidence in support of their respective contentions as they may desire."

Upon the return of the case to the circuit court, the parties agreed upon a commissioner and an order of reference, and the commissioner made and filed a report. Exceptions were filed to the report, to the effect,

that the report was not prepared by the commissioner, but by an attorney for the appellee, and was merely signed by the commissioner. This exception was sustained and the case again referred to the commissioner, with directions to make another report. In due time, another report was prepared and filed by the commissioner, and in which, after allowing certain credits on account of evidence, which was taken by the sureties after the first report had been set aside and which were not allowed in the first report, the first report was referred to and made a part of the second report, and the findings in the first report adopted, except as modified by the credits above mentioned. Exceptions were filed to each item of debit in the report, and to the disallowance of three items as credits, and a further exception to the entire report, upon the ground that it was not the result of the research and judgment of the commissioner, but that of another. The exceptions were all overruled, and the report showing that there went into the hands of the assignee the sum of $21,985.87 of the assets of the Building Trust Company, which he never accounted for and refused to deliver to the receiver, the court adjudged that each of the sureties was separately liable to the receiver upon its separate bond, in the sum of ten thousand dollars, and that they, under the judgment of the court, having paid upon the liabilities the sum of $3,365.74, rendered a judgment against each of them in the sum of $8,317.13 and the costs of the action. From this judgment the appellant, Fidelity & Deposit Company of Maryland, has appealed, but the Aetna Indemnity Company has not appealed, and the appellee has taken a cross-appeal.

The appellant, in its brief, fails to point out any inaccuracy in the report, or to indicate any reason why it is not correct, but contents itself with the general assertion, that all the findings of the report are incorrect. Without referring to any reason or citing any evidence in support of its contention, it contends that each of the items of debit are incorrect and erroneous. The items specifically excepted to are only eight in number. The item of $8,546.60, on account of loans made upon stock, can not be complained of by the appellant, because the assignee is given credit by all of it. The amount collected from the sale of real estate is not charged as $13,752.99, as appellant claims, but $10,780.00. The

items, bills receivable, $50.00; open accounts, $183.32; office furniture, $102.50; cash on hand, $112.45; from insurance, $348.21, are items, which the assignee in his answer, as well as the appellant, in its answer, admits specifically the receipt of by the assignee—that is, it is admitted that the assignee received the office furniture valued at $102.50; the open accounts in amount and value, $183.32; the demands upon which the claims for insurance are based, valued at $348.21; and the bills receivable to the amount of $50.00, and does not account for these items in any way, either by pleading or proof, and hence there could be no conclusion arrived at in regard to them, except that the assignee collected them and converted the property and retained the proceeds. The appellant, also, by its answer, admits, as well as the assignee, that the real estate which the assignee received as such was of the value of $13,752.99, the disposition of which has never been accounted for, but the commissioner arrived at the conclusion, that the amount which he actually received for the real estate was $10,780.00, with which he charged the assignee. The item of sums received by the assignee from the collection of debts owing to the Building Trust Company and secured by mortgages upon real estate, is found by the commissioner to be $65,178.78. The appellant, in its answer, admits that the loans due the assignor, which went into the hands of the assignee, were $74,706.47, from which deducted the loans upon stock amounting to $8,546.60, leaves the sum secured by real estate security at the sum of $66,159.87, and the commissioner finds the sums collected therefrom to be $65,178.78. The commissioner bases his finding upon the inventory filed by the assignee, his pleadings, reports, and sworn statements on file, and the settlements made in the county court, and the evidence seems to fully bear out his conclusions. The assignee and the appellant, in their separate answers, admit and specifically state that the face value of the assets, which went into the hands of the assignee, amounted to the total sum of $89,255.94. The commissioner finds and charges him as having collected and received out of the above assets the sum of $86,302.86, but charges him in addition to these sums with the receipt of $2,000.00 from the rents of the real estate owned by the assignor, which item is not denied in the pleadings nor excepted to in the report of the commissioner. The

foregoing items show the debits with which the assignee was properly chargeable to be the total sum of $88,302.86.

The general rule, which is applied in an action against a trustee of any kind for an accounting, is, that when assets are shown to have been received by him, the burden rests upon him to make a satisfactory accounting of them, and if he does not do so, the doubts and obscurities in his accounts are to be taken adversely to him. In the absence of evidence of the actual value of property, which goes into the hands of an assignee for creditors, he may be properly charged with the inventoried value. These principles are founded in the rules of evidence and common sense. The assignee must be presumed to know what he has done with the assets of the estate, which came into his hands for distribution, and what amounts he has realized from the sale of them, and what disbursements he has made, and this knowledge may be his, alone. The assignee must take the burden of all affirmative defenses to an action for an accounting against him, because otherwise it would devolve upon the beneficiaries of the trust to prove negatives, about which they may possibly know nothing and have very ill-convenient means of discovery, while the dispositions he has made of trust property and the disbursements made by him are directly within his knowledge and easy of proof by him. The commissioner allowed the appellant all the credits, which it or its principal claimed to be entitled to, except three, and they are the subject of exceptions. The first item claimed as a credit and disallowed is $119.94, which the assignee claimed as expenditures for expenses, which was denied, and no evidence was offered to sustain it. The second item claimed as a credit, but disallowed, is the difference between the sums of $3,767.20, which the assignee claimed that he had paid for attorney's fees, and the amount of $2,684.00, which the commissioner allowed him, being $683.20. It appears that the sum of $2,684.00 is all that there is any proof tending to show that the assignee ever paid for attorney's fees, properly chargeable to the estate. The third item, claimed as a credit and disallowed, is the sum of $3,084.10, which was allowed as a credit in the two county court settlements under the head of "bills receivable." It appears that these were simply promissory notes, which the assignee

had taken in settlement of the claims of the assignor against certain debtors, and were allowed as credits as though they were against insolvent persons. There is no evidence that these notes were uncollectible, or that the persons who owed them were insolvent, and in fact there is not any reason given or apparent for allowing the amounts of them as credits. The records of the county court show that after the credits by them were given, they were returned to the assignee for collection, and no account of them has ever been rendered, although the collection or failure to collect is a matter peculiarly within the knowledge of the assignee, and the burden was upon him to show that they were uncollectible, or that they have not been collected, and in the absence of such accounting they should not have been credited. After all the proper credits were given, it appears that there was yet due the appellee the sum of $21,985.87. The evidence fails to show that the report of the commissioner was not the result of his own research and judgment, although he had the clerical assistance of one of the attorneys for appellee. Hence, the court properly overruled exceptions of appellant to the report.

(2)   The further contention is, that it is not liable for any act of the assignee after the 25th day of March, 1901, and that the settlements made by the assignee with the county court being *prima facie* correct, that they show that no conversion of the assets was made by the assignee until after that time, and hence there is no liability attaching to it, as a surety. This is based upon the fact, that upon its motion an order was made upon that date requiring the assignee to execute an additional or new bond. This bond was not executed, however, until the 15th day of April, 1901. Assets to the amount of $86,302.86 went into the hands of the assignee on June 27th, 1899, and $2,000.00 as rents collected, thereafter, but at what times does not appear. The county court settlements do not show that he was charged with all of the assets or that he paid out all of same, which were in his hands, following each of the settlements; or that all of the assets, which he had received up to April, 15th, 1901, were intact, except what had been properly disbursed up to that time. The settlements only show a portion of the assets received, and the distribution of the portion reported by the assignee as having been received. The fact that he failed to report and charge

himself with all the assets received is rather indicative
that he was then engaged in a conversion and wasting
of the assets. It may be observed from the record, that
the surety in the bond, which was executed April 15th,
1901, contended, in the court below, that it was not li-
able for any wrongful act of the assignee previous to
that date, and if it should be held, that it is incumbent
upon the appellee, before liability would attach to one
of the sureties, to prove that the conversion occurred
either before or after the 15th day of April, probably
both would escape liability, because the appellee, with-
out knowledge of when the conversion occurred, would
not be able to show by proof when it occurred. All of
the assets came into the hands of the assignee before
the second bond was executed. By section 4659, Ky.
Statutes, it is provided, that if the surety in a bond of
an assignee wishes to be relieved from future liability
and to obtain indemnity for such as may have been in-
curred, or either, may, after giving proper notice to the
assgnee, move the court for an order to that effect. Sec-
ton 4661, Ky. Statutes, provides, that the notice may be
intended for the execution of a new bond, with other
surety, to effect a discharge from future liability, or as
an indemnity for the past acts of the principal, or both.
Section 4663, Ky. Statutes, provides:

"If a new bond is given, it shall operate a discharge
of all the sureties making the motion from all liability
for the acts of the principal thereafter done, and if the
object be so specified, the bond shall contain a stipula-
tion or covenant to indemnify the said sureties against
any loss, cost or damage legally incurred by reason of
said suretyship."

Hence, it does not appear, that under the provisions
of these statutes, a surety, by requiring his principal to
execute a new bond, can be released from any liability
upon the bond upon which he is surety, except such as
may be incurred by the principal after the execution of
the new bond. If a covenant of indemnity, for the surety,
who makes the motion, is inserted in the new bond, as
between the surety making the motion and the obligors
in the new bond, the obligors in the new bond would
doubtless be liable for the entire defalcation, but this
would not affect the liability of the surety in the old bond
to the beneficiaries of the assigned estate, except as to
the acts of the assignee after the execution of the new

bond, and not to that extent, unless the motion and order of the court below should extend to his release from liability for the acts of the assignee after the execution of the new bond. This has been the construction placed upon these statutes when applied to the bonds of guardians, personal representatives and collecting officers. Pepper v. Donnelly, 87 Ky. 259; Jones v. Gallatin County, 78 Ky. 491; Abshire v. Rowe, 112 Ky. 545; Johnson v. Jones, 24 R. 16; Barker v. Boyd, 24 R. 1389. Unless the surety pursues the statutory method, the execution of a new bond is only a cumulative security, and the sureties upon both bonds are jointly bound. The appellant, in the instant case, gave the statutory notice, and caused the court to require the assignee to execute a new bond, which he did, and procured the making of an order, which released it from liability for after acts of the assignee, but it still remained liable for the acts of conversion and waste up to the time of the execution of the new bond. The obligation of sureties in the bond of a trustee is a responsibility for the fidelity and integrity of the trustee. They are responsible for all moneys received, by reason of the trust, and for all such as the trustee should, with proper diligence have collected, and for the proceeds of the trust property when sold by the trustee, until the money has been paid to those who are entitled to receive it. Of course, this responsibility lies within the scope and terms of the surety's contract. In Boyd v. Withers, 103 Ky. 698, a surety in a guardian's bond had given notice and the court required the execution of a new bond, and by an order, released the surety in the old bond from liability for the future acts of the principal. Thereafter the guardian was removed from his trust and another appointed. The new guardian first, by suit, exhausted the sureties in the new bond, but a considerable balance was still left unpaid. He then instituted a suit against the surety in the old bond to recover the balance. The surety in the old bond contended that the presumption was, that the funds were, intact, in the hands of the guardian, when the new bond was executed, and that he could not be made liable, unless it was proven that the waste of the funds complained of occurred before the execution of the new bond, and that the record failed to furnish such proof. This court, however, held that the liability of the surety was the same as his principal, and that after proof of the re-

ceipt by the guardian of the ward's money and failure to account for it, "the guardian has not faithfully discharged the duty imposed by his obligation until he has clearly shown how it has been disposed of." The court further said:

"In our opinion, the law requires the appellee (the surety in the old bond) to show what became of the money of appellant, which was received by the guardian while he was bound as surety upon his bond, and in the absence of proof showing clearly that at the date of the execution of the new bond the fund was intact in the hands of the guardian, he should be held liable for the balance shown by the proof to be due."

In the instant case, the appellant was surety for nearly two years upon the bond of the assignee, after he had received all the assets of the trust estate, and before the execution of the new bond. The appellant does not pretend by any proof to show that at the execution of the new bond the undistributed portion of the assets was intact in the hands of the assignee, or when the conversion of the assets took place, or what has become of them, and it can not escape liability until it shows by proof that the maladministration of the estate occurred after the execution of the new bond.

The cross-appeal of appellee is, because the court failed to adjudge that he was entitled to recover interest at the rate of six per centum per annum upon the amount of the recovery against the appellant, from the filing of the petition, instead of from the rendition of the judgment, only. There seems to be no reason why the contention of appellee is not just, and he is entitled to recover the interest from the filing of his petition upon the amount of the recovery.

It is, therefore, ordered that the judgment upon the original appeal be affirmed, but upon the cross-appeal, that it be reversed and remanded for a judgment consistent with this opinion.