## Winston et al. v. Slaton et al.

(Decided March 23, 1937.)

832

833

HENSON & TAYLOR for appellants.

G. L. DRURY and E. R. MORTON for appellees.

Opinion of the Court by Creal, Commissioner—Affirming.

In April, 1906, Jennie Winston instituted an action for divorce against J. S. Winston in the Union circuit court on grounds which it is unnecessary to enumerate. She alleged that he was wasting his estate and that some months before the filing of the action he had sold a farm for $20,000 and received a large portion of the purchase price in money and notes; that in order to induce his mother, Eliza Winston, to join in the conveyance and relinquish her right of dower in the land he promised to invest a sufficiency of the proceeds derived from the sale of the land in other real estate for the benefit of his mother, but that he had failed to do so. She prayed for divorce from bed and board and for alimony and maintenance, all necessary orders for the safekeeping and preservation of her husband's estate, and that a receiver be appointed to take care of the estate and for a general order of attachment against him, and that he be restrained from disposing of his property.

On June 21, 1906, judgment was entered wherein it was recited that plaintiff was entitled to a divorce from bed and board, but that plaintiff consenting, the judgment for partial divorce for the present be held up. It was further recited that it appeared to the court that settlement had been made between the plaintiff and defendant as evidenced by a deed of trust dated April 4, 1906, and same was adjudged a reasonable settlement of alimony and property rights involved between the parties and that the settlement be confirmed and that Phil H. Winston, the trustee named in the deed, qualify and give bond with good security for the faithful performance of his duties as trustee and that he report to the court from time to time as required by law.

On June 29, 1906, Phil H. Winston appeared in court, took the oath as trustee, and executed bond with A. S. Winston as surety, conditioned that he would satisfactorily perform all his duties under the provis-

ions of the deed of trust and orders of the court and would pay over and properly account for all money or property coming into his hands as trustee. The deed referred to was dated April 4, 1906. The plaintiff Mrs. Eliza Winston, mother of grantor, and Phil H. Winston, trustee, were grantees. It was recited that for the purpose of settling all property rights and matters of alimony and maintenance involved in the suit, the grantor conveyed to Jennie and Eliza Winston for and during their natural lives, or for the life of the one who lived the longest, a tract of land in Union county fully described in the petition and also conveyed to plaintiff certain personal property. Certain lien notes held by the grantors were transferred to the trustee to be held by him or such successor as might be appointed by the court in his stead, and it was provided that the trustee should collect and pay interest that accrued on the notes to the grantors after paying costs and attorney fees of the suit, and taxes accruing against the trust fund and interest on notes to which some of the trust securities had been attached as collateral. The trustee was also empowered to apply sufficiency of the principal of the notes to the satisfaction of notes against the grantor and to which they had been attached as collateral. It was further provided that the trust fund should continue for a period of not less than five years from the date of the deed at which time it should terminate, if the grantor should show to the court that he was sober, discreet, and a man capable of prudently managing his business, and upon such showing the court might then or thereafter at its discretion direct the trustee to surrender the trust funds to the grantor or might continue the trust; and further that if Eliza Winston and Jennie Winston should die before the expiration of the five years, the trustee should take charge of the farm and personal property left undisposed of at the death of Jennie Winston and hold same subject to the same trust and conditions as above provided subject to the payment of any indebtedness of Eliza Winston or Jennie Winston. It was further provided that should the grantor die before the trust created should terminate and before the death of Jennie Winston or Eliza Winston, the trust should continue for the benefit of Jennie and Eliza Winston if necessary for their maintenance, and if not necessary for their maintenance, the trust to accumulate and be held by

the trustee subject to the orders of the court. J. S. Winston died within a year after the execution of the trust deed.

On June 21, 1907, the trustee filed a report for settlement showing a principal in his hands of $5,144.35, and interest in the sum of $132.91. On March 17, 1915, pursuant to order of court, the trustee executed a new bond in the penal sum of $7,000, conditioned in substance the same as the first bond with A. S. Winston and W. T. Welch as sureties. On November 26, 1923, Mrs. Anna Hanley entered motion to require the trustee to execute bond and to make settlement of his trust to date and show in what securities and in what manner the trust funds were invested, it being recited in the motion that Mrs. Hanley would be entitled to one-half of the proceeds of the fund in the hands of the trustee at the death of her mother, Jennie Winston. The motion was sustained and the trustee filed a report and settlement showing a balance of $6,663.77 in his hands as of January 1, 1924. He also executed a new bond in the penal sum of $7,000 conditioned in effect as the former bonds with E. R. Morton and W. W. Slaton as sureties. Thereafter on June 28, 1924, the report and settlement of the trustee was confirmed and the cause was stricken from the docket with leave to reinstate it on motion of any party in interest without notice.

On May 27, 1931, Mrs. Anna Jones, formerly Anna Hanley, filed an intervening petition setting out the creation and purposes of the trust, and alleging that both Eliza and Jennie Winston were dead and that upon their death the trust terminated and the trust funds passed to her and to Mrs. Ada Williams as the only children and heirs at law of John S. and Jennie Winston after payment of all just claims against the trust estate. She alleged that she had paid the funeral expenses of her mother in the sum of $701.50. She prayed that the trust be adjudged terminated, and after payment of all just claims against the trust estate including the sum paid by her as funeral expenses of her mother, the remainder be equally divided between her and Mrs. Ada Williams. She also filed a motion reciting that no settlement or accounting had been made with the trustee and that the trustee be ordered and directed to make settlement of his accounts, which motion was sustained, and the trustee filed a report and

settlement showing a balance of $8,090.72 in his hands as of January 4, 1932, and the character of securities in which same was invested.

Mrs. Williams and Mrs. Jones filed exceptions to the report and settlement of the trustee, which exceptions were sustained, and it was adjudged that the trustee was chargeable with the sum of $6,663.77, shown to be in his hands on January 1, 1924, with interest from that date until paid, and the trustee was ordered to pay such sum with interest to the master commissioner of the court on or before November 10, 1932.

On November 11, 1932, Anna H. Jones and Ada C. Williams instituted this action and by their petition as amended sought to recover of Phil H. Winston, as trustee, and W. W. Slaton and E. R. Morton, the sureties on his bond, the sum of $6,663.77 with interest from January 1, 1924, alleging that the trustee had failed and refused to comply with the orders of the court to pay such sum to the master commissioner to be held subject to the orders of the court.

By answer, W. W. Slaton and E. R. Morton made a general denial of the material allegations of the petition, and in a second paragraph alleged in effect that the bond which they signed or any bond executed under the trust agreement was void and of no effect because the trust agreement did not require any bond and the court was without authority to require the execution of any bond by Phil H. Winston as trustee. They made their answer a cross-petition against A. S. Winston and the widow and heirs of W. T. Welch and in a separate paragraph of their answer set up the execution of the first two bonds above referred to and alleged that they were valid and subsisting obligations of the trustees and that he and the sureties were liable thereon and such bonds were of the same dignity and effect as the bond signed by the answering defendant; that if they were liable on the bonds which they signed, A. S. Winston and W. T. Welch were liable for their part of any deficiency not paid by Phil H. Winston; that at the time of the death of W. T. Welch, who signed the second bond executed by the trustee, the liability thereon·was transmitted to his estate or any inheritance of his heirs at law. They prayed that the cross-defendant be required to participate in any liability ad-

judged against them. Upon proper allegations they caused attachments to issue which were levied upon some personal property of A. S. Winston and upon real estate owned by W. T. Welch at his death and which had descended to his heirs.

By amended answer and cross-petition, W. W. Slaton and E. R. Morton alleged that on February 7, 1933, Phil H. Winston paid to the plaintiffs the sum of $2,200, and they as sureties paid to plaintiffs the sum of $4,-300, which was in full satisfaction of all demands set up by plaintiffs; that upon the payment by them of the sum of $4,300, the plaintiffs assigned all their rights and claims in the action, subrogating them to any and all legal or equitable rights or claims plaintiffs had against any bond or bonds or any sureties thereon, and they thereupon were subrogated to the rights of the plaintiffs in any demands they had against defendants named in the cross petition; that while the first two bonds above mentioned were in full force and effect, Phil H. Winston used and appropriated the trust funds in his hands to his own use and benefit, and as between them and the cross-defendants the liability on the bonds was against the latter, and they prayed for judgment accordingly.

By answer to the cross-petition the cross-defendants alleged that the bonds executed were void for the reasons set out in the answer of Morton and Slaton, and further alleged in effect that upon the execution of the bonds which Morton and Slaton signed as sureties, the sureties on the former bond were released; that the sum paid by Morton and Slaton to plaintiffs was paid voluntarily while the cross-defendants were denying and contesting liability and by reason of payment in such circumstances they were not entitled to any right of subrogation. They also entered a plea of limitation.

On February 13, 1935, the cause was submitted to the court without the intervention of a jury, and it was adjudged that the petition as amended and the answer and cross-petition of W. W. Slaton and E. R. Morton as amended as against the cross-defendants be dismissed and the attachments be discharged and dismissed; that the action be dismissed as to the defendant Phil H. Winston. To all of which W. W. Slaton objected and excepted and prayed an appeal which was granted.

As shown by the record, Morton and Slaton on February 14, 1935, and before the end of the term of court in which the judgment was entered, filed motion and grounds for new trial, which motion and grounds were later sustained and a new trial granted. The motion and grounds for new trial were resisted by the cross-defendants and the right of the court to grant a new trial is called in question by this appeal.

On November 20, the cause was again submitted for trial without the intervention of a jury, and it was adjudged that W. W. Slaton and E. R. Morton recover of the cross-defendants the sum of $2,150, being one-half of the amount paid by Slaton and Morton to Anna H. Jones and Ada C. Williams with interest from February 7, 1933, the attachments be sustained and the attached property sold to satisfy the judgment, and the cross-defendants are appealing.

Under the heading of "Points and Authorities" in brief for appellants, nearly a score of grounds are assigned on which they rely for reversal, but these are so interrelated that they may be summed up in fewer material points.

It is first argued in effect that where the parties to the divorce action entered into a private agreement for settlement of alimony and property rights of the wife and the mother of the husband as evidenced by the deed of trust and the funds had been delivered to the trustee to be held and disposed of by him as provided in the deed, the court thereafter had no authority to require the trustee to execute a bond; and that since the bond was not required by statute or by the parties or voluntarily executed for a valuable or any consideration until after the funds had come into the hands of the trustee, the bonds were void and of no force or effect and did not bind the sureties for any default thereafter occurring. This argument, however, overlooks the provision and manifest purpose of the deed of trust and the conditions under which it was executed. The action for divorce and alimony was pending in the court, and evidently, as appears of record, the settlement of the property rights as between the husband and wife as evidenced by the deed of trust was submitted to the court for approval and was approved and confirmed by the court as a settlement of the property rights of the parties to the action. The deed

of trust is thoroughly impregnated with the idea, intent, and purpose that the trustee as well as the trust funds should at all times be subject to the direction and control of the court. The trust could not be terminated except on orders of the court and after a showing that the grantor in the trust deed was sober and discreet and capable of prudently managing his business, and even then it was left to the court's discretion. It was provided in the deed that the trust securities mentioned therein were transferred and placed in the hands of the designated trustee to be held by him or by such other trustee as the court might appoint in his stead. In the circumstances it was manifestly the duty of the court to take such steps and make such orders as were necessary to preserve the trust funds and to have them so administered as to effectuate the objects and purposes expressed in the trust agreement and approved by the court. The trustee bore to the court practically the same relationship as that of a commissioner or receiver to whom funds or property had been committed by orders of the court. It is our view that it was the right, if not in fact the duty, of the court as a condition to approving the settlement submitted by the parties to require that the trustee should execute bond; and later developments demonstrate the propriety and wisdom of that requirement. In the established circumstances it is apparent and we are constrained to hold that the bonds signed by Winston and Welch as sureties were valid obligations by which they became bound to the extent of the funds which passed into the hands of the trustee under the agreement of the parties which in effect became the judgment of the court respecting alimony and property rights.

It is further argued by appellants that when the trustee made a settlement and filed a report showing the nature of securities in which the trust funds were invested and executed a new bond pursuant to order of the court made upon motion of one of the heirs of the grantor in the trust deed, the sureties on former bonds were thereby released, and they cite and rely on the cases of Duncan's Adm'r v. Jenkins, 4 Ky. Op. 192; Moore v. Potter, 72 Ky. (9 Bush) 357; Miller v. Wheeler, 147 Ky. 131, 143 S. W. 1028. In the first case cited a guardian upon his own motion was permitted to ex-

ecute a new bond for the express purpose of releasing the surety on his original bond from liability. There was a statute in effect providing how the surety on the bond of a guardian might be released by proper application to the county court. The court, holding that the execution of the new bond in the circumstances operated to release the surety on the original bonds, said:

> "It may be safely assumed that the guardian made the application because of the fact that his surety Duncan [on the original bond] wished to be released."

In the second case cited the surety on the bond of a trustee brought suit to be released and the court required a new bond which was given with another person as surety. It was held that the surety on the first bond was thereby released. The last case cited by appellants has no bearing on the question of liability of sureties on a bond or other obligation and clearly does not sustain appellants' contention. It will therefore be seen that the cases relied on by appellants are easily distinguished, since in the case at hand there was no motion or action of any kind upon the part of a trustee or the sureties on the first two bonds to have the sureties released therefrom or in any way indemnified nor was there any order of the court evincing a purpose to release them. A series of bonds executed in circumstances shown here have been generally regarded by this and other courts as additional and cumulative and the sureties on the various bonds treated as co-sureties.

In the early case of Breckinridge v. Taylor, 35 Ky. (5 Dana) 110, it appears that the cashier of a bank had executed two bonds for the faithful discharge of his duties as such; the first bond was executed in the year 1815, and the second in 1818. This court, in determining a controversy respecting liability as between the different sureties on the two bonds, said that so far as there may have been any official delinquency after the date of the last bond, it is immaterial whether these bonds were of different dates or were executed at the same time, and that although they were sureties in two separate bonds as between them they were co-sureties, and all equally liable.

In the case of United States Fidelity & Guaranty Co. v. McGinnis' Adm'r, 147 Ky. 781, 145 S. W. 1112,

a master commissioner of the Henry circuit court had executed bond as such on four different dates, a surety company was surety on three of the bonds, and an individual was surety on the other. It was held that the bonds were cumulative and the surety company and the individual were cosureties and equally bound for the default of the principal and as between them, the right of contribution prevailed. In the case of Elbert v. Jacoby, 71 Ky. (8 Bush) 542, a guardian who had executed bond as such in the county court procured a decree in the circuit court for the sale of his ward's land and executed bond in the latter court. It was held that the surety on the two bonds were each liable to contribute one-half of the loss occasioned by his conversion of the proceeds of the sale of the land. In Cobb v. Haynes, etc., 47 Ky. (8 B. Mon.) 137, it was held that sureties on bonds executed by an administrator at different dates were on the same footing and as cosureties were liable to contribution. No adjudication to the contrary has been pointed out, and we are aware of none in a situation the same or similar to the one presented by this record. See, also, Frederick v. Moore, 52 Ky. (13 B. Mon.) 470; Boyd v. Gault, etc., 66 Ky. (3 Bush) 644; Fidelity & Deposit Co. of Maryland v. Husband, 174 Ky. 200, 192 S. W. 51; Cochran v. Walker's Ex'rs, 82 Ky. 220, 56 Am. Rep. 891.

Turning to other jurisdictions, we find that in the case of Bank of America National Trust & Savings Association v. Fidelity & Deposit Co. of Maryland et al., 9 Cal. App. (2d) 687, 51 P. (2d) 472, 474, it was held that personal surety on a guardian's bond was not discharged of liability by the filing of a subsequent new bond by corporate sureties where a discharge of the personal surety was not sought. In that case, as in this, the surety on one of the bonds brought the surety on the other bond before court by cross complaint. It was stated in effect in the course of the opinion that the orders of the court requiring the guardian to "give a new bond in the sum of $2,000.00" did not give rise to the inference that the new bond was in lieu of the original bond. In Anderson v. Johnson, etc., 150 Or. 386, 45 P. (2d) 168, it was held that successive bonds by an administrator for the faithful performance of his duties as such were cumulative and the sureties on the various bonds were liable in the same degree as if all

the sureties had signed the same bond. To the same effect, see Newcomb, Judge v. Ingram et al., 211 Wis. 88, 243 N. W. 209, 248 N. W. 171; Central Banking & Security Co. v. U. S. F. & G. Co., 73 W. Va. 197, 80 S. E. 121, 51 L. R. A. (N. S.) 797; New Amsterdam Casualty Co. v. Bookhart et al., 212 Iowa, 994, 235 N. W. 74, 76 A. L. R. 897, and a number of cases cited in annotations following that opinion.

Thus it will be seen that the rule announced in the authorities cited has been long established and has become a fixed policy of our law, the soundness of which cannot be doubted, and we see no justification for making a departure from it. As also appears from these authorities, the rule applies alike to statutory and common-law bonds.

The authorities cited clearly settle any controversy concerning the right of contribution, but if any doubt remained, it is set at rest by section 486 of the Statute, which reads:

"Contribution shall take place between all persons who may become jointly liable, by civil action, for any act or omission in a trust or official capacity hereafter done or omitted."

This section was enacted in 1892. Section 484 of the same chapter of the Statute provides that the extent of recovery in cases of contribution shall be the same in courts of law that it is in courts of equity.

Concerning appellants' further insistence that their plea of limitation should have been sustained, it may be said that the bonds were not only cumulative but were continuing, and liability of the sureties on the bonds accrued and right of action arose when the trustee failed to account for and pay over the funds when ordered to do so by the court.

It is next argued by appellants that when in the suit between the heirs of the grantor and trustee and while both appellants and appellees were defending and contesting the liability, appellees voluntarily compromised and paid the claim without the knowledge and consent of appellants, they thus rendered themselves mere volunteers and as such could not maintain their cross-action for contribution. Among other authorities, the

case of Maryland Casualty Co. v. Givens, **177 Ky. 131,** 197 S. W. 497, is cited, but in that case the person who voluntarily paid the obligation was a stranger to the transaction and in no way personally liable.

Section 4665, Kentucky Statutes, provides in effect that where one surety pays the whole or any part of a debt or liability for which he is bound, he may sue his cosureties separately or jointly with the principal for contribution; but the statute provides that the cosurety is not precluded from making any defense that might have been made against the original demand. Appellants were liable on the bond for any default on the part of the principal. The court had determined the amount in the hands of the trustee and directed that he pay same to the master commissioner of the court which he failed to do. There was no escape from the liability, and the record clearly discloses that it could not be enforced against the principal in the bond. The record likewise discloses that by compromise agreement, the liability was substantially reduced and appellants were not prejudiced by the settlement, since they had been afforded the opportunity of making every available defense.

Argument is made that the right of action on the trust bond was in the personal representative and not in the heirs of the grantor in the trust deed, and therefore appellees could not successfully maintain a cross-action against appellants for contribution, but in the proven circumstances this position is wholly untenable. See Anderson v. Smith, 60 Ky. (3 Metc.) 491.

Counsel for appellants assert a number of reasons why the court was without authority to sustain the motion and grounds for new trial and set aside the judgment of February 13, 1936; the first being that motion and grounds for new trial were not filed within the time prescribed by section 342 of the Code of Civil Practice. It is not disputed that the motion for new trial was filed within three days after the entry of the judgment, but it is insisted that the case was heard and argued and the court had indicated on February 8 what his finding would be and that the motion should have been filed within three days thereafter. The judgment which was rendered on February 13 recites that, "This day this cause came on for final hearing and

judgment," etc., and some corrections were made on the judgment on that day. It is therefore manifest that the court's final decision was made on that day and a motion for new trial within three days thereafter met the requirements of the Code in that particular.

It is further insisted that the motion did not meet the requirements of the Code because it was not filed in open court. The record shows that motion and grounds for new trial were entered on February 14, but by affidavit and counter affidavit it is disclosed that it was actually filed with the clerk on the 15th and that he, as a matter of convenience, entered it as of the 14th. It is further disclosed by affidavit that on the 15th, which was the last day of filing the motion, the regular judge was ill at his home at Dixon and could not attend court at Morganfield. Counsel for appellants lived at Henderson. Upon failure of the judge to appear in court on the 15th, counsel for appellees went to his home at Dixon and presented their motion and grounds for new trial, and he directed them to return and tell the clerk to file the motion, which was done. This was during the statutory term of court in which the judgment had been entered and before the court had finally adjourned. The illness of the judge was a casualty which neither party could foresee or avoid, and in such state of case we are constrained to hold there was a sufficient compliance with the Code provision.

It is further insisted that the motion and grounds for new trial were insufficient. The grounds assigned for new trial are substantially in the language of causes 1, 6, and 8 mentioned in section 340 of the Code of Civil Practice. It has been held, as shown by brief for appellants, that grounds for new trial stated in the language of subsections 1 and 8 of section 340 are too general and therefore insufficient. But we find no such holding regarding subsection 6 of that section, and we therefore conclude that motion and grounds were sufficient.

It is further argued that the court erred in sustaining the motion and grounds for new trial because his action was not based upon the evidence but upon the question of law, but after all the determination of law in this case depended on the facts. A cross-appeal prayed and granted to appellees only called in ques-

tion the judgment entered as of February 13, 1936, in the event this court should for any reason reverse the judgment finally entered. It will therefore be unnecessary to consider the cross-appeal.

Judgment affirmed.