COMMONWEALTH of Kentucky ex rel. Appellants,

v.

Charles SLACK, Sherman Lucas, Richard Spaniard, and Joe Brady, Appellees.

The OHIO CASUALTY INSURANCE CO., Appellant,

v.

COMMONWEALTH of Kentucky on relation of ATTORNEY GENERAL, et al., Appellees.

Court of Appeals of Kentucky.

June 15, 1956.

Hal O. Williams, Asst. Atty. Gen., for the Commonwealth.

Roy Pennington, William Scent, Frankfort, for other appellants.

Houston Wood, Maysville, for appellees Charles Slack and others.

Stoll, Keenon & Park, Lexington, Gladney Harville, for appellant.

Hal O. Williams, Asst. Atty. Gen., for the Commonwealth.

Houston Wood, Maysville, for appellees Charles Slack and others.

CULLEN, Commissioner.

Charles Huron, Clerk of the Mason County Court, defaulted in the payment, to several agencies of the Commonwealth, of sums collected on their behalf. The default amounted to approximately $16,000. The Commonwealth brought action against Huron, and against the sureties on two bonds he had executed, each in the amount of $10,000. Judgment was entered against Huron on April 9, 1952, in the amount of $16,873.03. Subsequently, judgment was entered against the Ohio Casualty Insurance Company, surety on the first bond executed by Huron, in the amount of $10,000, together with interest on the amount adjudged against Huron from the date of the judgment against Huron. The second judgment freed the sureties on the second bond from any liability.

The Commonwealth has appealed from so much of the second judgment as relieved from liability the sureties on the second bond. It is the Commonwealth's contention that the sureties on both bonds are jointly liable for the default, up to the full amount of each bond, and therefore, in net result, the sureties on each of the bonds are liable for half of the judgment against Huron, or approximately $8,400 each.

The Ohio Casualty Insurance Company also has appealed, contending that the sureties on the second bond should be held to some liability. However, the company maintains that the total liability of the sureties on both bonds is only $10,000, and therefore the sureties on each bond are liable only for $5,000. The company further argues that it was error to hold the company liable for interest from the date of the judgment against Huron.

Huron took office as county court clerk on January 2, 1950. At that time he executed bond in the penal sum of $10,000, with the Ohio Casualty Insurance Company as surety. In May 1951 it was discovered that Huron had failed to pay over to the proper state agencies substantial sums collected by him on behalf of the state. Information concerning the shortage was received by the Ohio Casualty Insurance Company, and an audit made by the company in June 1951 showed a shortage substantially in excess of $10,000. There were discussions between Huron, representatives of the state, and the bonding company as to what action should be taken, and there is a conflict in the evidence concerning what action, if any, was agreed upon. However, the shortage was not made public and Huron continued in office.

On August 21, 1951, Huron asked four of his friends to execute a new bond for him. Apparently, he told them that he desired to avoid the expense of paying premiums on a corporate surety bond, and that by furnishing a bond with personal surety he could discontinue his former bond. The friends executed the new bond, in the penal sum of $10,000, and on August 28, 1951, it was approved by the county judge pro tem. The order of approval was not conditioned upon cancellation of the first bond, and recited nothing other than that the bond was approved.

On September 7, 1951, the shortage in Huron's accounts became public. Huron's office was closed by order of the county court on September 15, and action against Huron and the sureties on both bonds was commenced on September 24.

The evidence shows beyond question that all of the defaults occurred prior to the execution and approval of the second bond. The issue before us is simply whether the sureties on the second bond can be held liable for such prior defaults.

In Jones v. Gallatin County, 78 Ky. 491, the sureties on the initial bond of a sheriff had moved under the statutes (now KRS 62.090 to 62.120) to be discharged from future liability. A new bond was given,

and an order was entered discharging the sureties on the first bond from liability "for the acts of the principal thereafter done." KRS 62.110. It later developed that the sheriff had failed to pay over to the county certain taxes collected by him prior to the date of execution of the new bond. It was held by this Court that the sureties on the new bond were not liable for moneys collected by the sheriff prior to the date of their bond.

While the initial surety in the Jones case had been released from future liability, this fact would not seem to make any difference as concerns the question of whether the liability of the sureties on the new bond was retroactive. Whether released from future liability or not, the surety on the first bond would remain liable for defaults occurring while the first bond remained in effect.

In Ketler v. Thompson, 13 Bush 287, 76 Ky. 287, it was held that the sureties upon a bond executed as a renewal of a sheriff's official bond were not liable for past defalcations of the sheriff.

The general rule in other jurisdictions seems to be that sureties on an official bond are liable only as to acts done after the execution of the bond, and that the bond does not have retroactive operation. 67 C.J.S., Officers, § 162, p. 466; 43 Am. Jur., Public Officers, sec. 433, p. 202.

At this point it should be mentioned that for a great many years there has been a statute in effect in Kentucky providing that the sureties on any *revenue* bond of a *sheriff* shall be liable for any default during the year (formerly the term) in which the bond is executed, "whether the liability accrues before or after the execution of the bond." KRS 134.260. Accordingly, our cases have imposed retroactive liability upon the sureties on such bonds, under the statute. See Fidelity & Deposit Co. of Maryland v. Brown, 230 Ky. 534, 20 S.W.2d 284; Fidelity & Casualty Co. of New York v. Breathitt County, 276 Ky. 173, 123 S.W.2d 250. (The Jones case, Jones v. Gallatin County, 78 Ky. 491, preceded the statute.)

The fact that the legislature chose to enact a statute imposing retroactive liability upon the sureties on sheriffs' revenue bonds supports the proposition that in the absence of legislation there ordinarily is no retroactive liability.

The Commonwealth relies upon certain cases relating to *fiduciaries'* bonds, which held that a second or additional bond was cumulative or retroactive. See Barker v. Boyd, 71 S.W. 528, 24 Ky.Law Rep. 1389; Fidelity & Deposit Co. of Maryland v. Husbands, 174 Ky. 200, 192 S.W. 51; Abshire v. Rowe, 112 Ky. 545, 66 S.W. 394, 56 L.R.A. 936. These cases seem to be in accord with the general weight of authority, as concerns bonds of *fiduciaries*. See 25 Am.Jur., Guardian and Ward, sec. 190, p. 116; Annotation, 82 A.L.R. 585.

In Abshire v. Rowe, 112 Ky. 545, 66 S.W. 394, 56 L.R.A. 936, the court distinguished the Jones case (Jones v. Gallatin County, 78 Ky. 491) on the ground that it dealt with a sheriff's bond. The court said, 66 S.W. 395:

"* * * Jones v. Gallatin County, 78 Ky. 491, was a controversy between sureties upon different bonds as to their respective liabilities for a defalcation of a sheriff as collector of revenue. It may well be argued that the sureties upon the sheriff's bond undertook to covenant only against the wrongful acts of their principal within the period covered by their obligation; that is, from the time the bond was executed. Not so, however, as to a guardian's bond. There the guardian obligates himself to the ward by executing a bond to the commonwealth that he will account for and pay over to the ward all money that has come or may come to his hands by virtue of his office. Such is the effect, in one sense, of his undertaking. It is not merely that he will not misappropriate the ward's funds, but that, whenever legally demanded, they will be forthcoming. * * *"

The fact that KRS 62.060 provides that official bonds and fiduciary bonds shall con-

tain the same covenant, namely, that "the principal will faithfully discharge his duties," does not militate against the distinction made in the Abshire case, because the "duties" of an officer and of a guardian are not the same as respects the paying over of funds collected by them.

It is our opinion that the guardian cases are not applicable to the present case, and that the trial court correctly held that the sureties on the second bond were not liable for the defaults which anteceded the execution of the bond.

The contention of the Ohio Casualty Insurance Company that it should not be held liable for interest from the date of the judgment against Huron is based on the proposition that, because of various defenses asserted by the company, the claim against the company was not a liquidated claim. One defense was that, because there were two bonds in the amount of $10,000 each, the liability on each bond could not exceed one-half, or $5,000. Another was that in any event each bond was liable for only one-half the total default, or approximately $8,400. A third defense was that the amount of the default should be credited by the amounts of certain checks which Huron had given to the Commonwealth and which were collectible at the time they were given but became noncollectible by reason of delay of the Commonwealth in cashing the checks.

As we view it, none of these defenses affect the question of whether the claim against the surety company was a liquidated one. The claim was for $10,000— the amount of the bond. The default, even giving credit for the checks in question, was more than $10,000. The defenses relating to the liability as between the two sets of sureties were merely defenses that might go to reduce the amount of liability on the claim, and did not have the effect of making the claim an unliquidated one.

In any event, the court has discretion to allow interest even on an unliquidated claim. We find no error in the allowance of interest from the date of the judgment against Huron.

The judgment is affirmed on both appeals.